**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:                                            Chapter 11

SCIONTI CONSTRUCTION GROUP LLC,        Case No. 24-22427 (SHL)

                              Debtor.
------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF THE OBJECTION OF AMERICAN
BUILDERS & CONTRACTORS SUPPLY CO., INC. d/b/a ABC SUPPLY CO., INC. TO
DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §§ 362(A) AND 105(A), TO EXTEND
THE AUTOMATIC STAY TO NON-DEBTOR PRINCIPALS AND FOR SUCH
OTHER AND FURTHER RELIEF AS THE COURT DEEMS JUST AND PROPER**

Scott H. Bernstein, Esq.
Law Offices of Scott H. Bernstein LLC
*Attorney for American Builders & Contractors*
*Supply Co., Inc. d/b/a ABC Supply Co., Inc.*
101 Eisenhower Parkway, Suite #300
Roseland, New Jersey 07068
Telephone:  (862) 245-2667
Email: scott@scottbernsteinlaw.com

## <u>TABLE OF CONTENTS</u>

I.     FACTUAL BACKGROUND ........................................................................................1

II.    THE DEBTOR'S MOTION TO EXTEND THE AUTOMATIC STAY........................2

III.  LEGAL ARGUMENT ................................................................................................4

POINT A

      THE DEBTOR'S MOTION TO EXTEND THE AUTOMATIC STAY SHOULD BE
      DENIED BECAUSE THE DEBTOR FAILED TO COMMENCE AN ADVERSARY
      PROCEEDING. ........................................................................................................6

POINT B

      THE DEBTOR'S MOTION TO EXTEND THE AUTOMATIC STAY SHOULD BE
      DENIED BECAUSE THE PERSONAL GUARANTORS' LIABILITY TO ABC IS
      SEPARATE AND INDEPENDENT FROM THE DEBTOR'S LIABILITY TO ABC IN
      THE FLORIDA ACTION ........................................................................................6

POINT C

      THE DEBTOR'S MOTION TO EXTEND THE AUTOMATIC STAY SHOULD BE
      DENIED BECAUSE THE DEBTOR WILL NOT BE HARMED FINANCIALLY BY
      THE FLORIDA ACTION ........................................................................................6

POINT D

      DEBTOR'S MOTION TO EXTEND THE AUTOMATIC STAY SHOULD BE
      DENIED BECAUSE  THE CONTINUATION OF THE FLORIDA ACTION WILL
      NOT MEANINGFULLY IMPACT ON THE DEBTOR'S OPERATIONS WHICH
      LACK FINANCING AND LACK MEANINGFUL PROJECTS FOR WHICH THE
      DEBTOR IS EMPLOYED AS A CONTRACTOR. ...........................................8

POINT E

      THE DEBTOR'S MOTION TO EXTEND THE AUTOMATIC STAY SHOULD BE
      DENIED BECAUSE THE FLORIDA ACTION AGAINST THE PERSONAL
      GUARANTORS WILL NOT IMPACT ON THE DEBTOR'S ABILITY TO SECURE
      FUNDING FOR ITS REORGANIZATION EFFORTS .....................................9

POINT F

THE DEBTOR'S REQUESTED INJUNCTION SHOULD BE DENIED BECAUSE THE DEBTOR HAS NOT SATISFIED ITS BURDEN TO ESTABLISH BY CLEAR AND CONVINCING EVIDENCE THAT THE EXTRAORDINARY RELIEF SOUGHT IS WARRANTED. .................................................................................................................10

IV.    CONCLUSION.............................................................................................................13

# TABLE OF AUTHORITIES

## CASES

A.H. Robins Co., Inc.,
   788 F.3d 994 (4th Cir. 1986)....................................................................................................4

Aetna Cas. & Sur. Co. v. Namrod Dev. Corp.,
   140 B.R. 56 (S.D.N.Y. 1992).................................................................................................5-6

Chicago Title Ins. Co. v. Lerner,
   435 B.R. 732 (Bankr. S.D. Fla. 2010).....................................................................................7

CDS Bus. Servs., Inc. v. H.M.C. Inc.,
   19-CV-05759 (JMA) (LGD), 2023 U.S. Dist. LEXIS 74586 (E.D.N.Y. April 28, 2023) ...........5

FPSDA II, LLC v. Larin (In re FPSDA I, LLC),
   Case No. 10-75439, Adv. Pro. No. 12-08032, 2012 Bankr. LEXIS 5906,
   (Bankr. E.D.N.Y. Dec. 21, 2012) ..........................................................................................12

Gray v. Hirsch,
   230 B.R. 239 (S.D.N.Y. 1999) ..............................................................................................10

Hernandez v. Immortal Rise, Inc.,
   No. 11-CV-4360, 2014 U.S. Dist. LEXIS 33823 (E.D.N.Y. Mar. 13, 2014) ...............................12

Kamerling v. Massanari,
   295 F.3d 206 (2nd Cir. 2002) ................................................................................................12

In re Amfesco Industries, Inc.,
   81 B.R. 777 (Bankr. E.D.N.Y. 1988)......................................................................................7

In re Autobahn Classics,
   29 B.R. 625 (Bankr. S.D.N.Y. 1983) ......................................................................................4

In re FPSDA I, LLC,
   Nos. 10-BR-75439, 12-AP-08032, 2012 Bankr. LEXIS 5928 (E.D.N.Y. Bankr. Dec. 26,
   2012)...................................................................................................................................10-11

In re Hillsborough Holdings Corp.,
   130 B.R. 603 (Bankr. M.D. Fl. 1991) .....................................................................................4

In re Lazarus Burman Associates,
   161 B.R. 891 (Bankr. E.D.N.Y. 1993).....................................................................................9

*In re Nuovo Ciao Di LLC*,
    No. 23-10068 (JPM), 2023 Bankr. LEXIS 2335 (Bankr. S.D.N.Y. Sept. 22, 2023) ...............5, 9

*In re Residential Capital, LLC*,
    480 B.R. 529 (Bankr. S.D.N.Y. 2012) ....................................................................................4

*In re United Health Care Org.*,
    210 B.R. 228 (S.D.N.Y. 1997)................................................................................................9

*Millard v. Developmental Disabilities Institute, Inc.*,
    266 B.R. 42 (Bankr. E.D.N.Y. 2001)....................................................................................11

*Mokuba N.Y. LLC v. Pitts (In re Pitts)*,
    Case No. 808-74860-reg, Adv. Proc. No. 809-8230-reg, 2009 Bankr. LEXIS 4023
    (Bankr. E.D.N.Y. Dec. 8, 2009).............................................................................................11

*Rodriguez v. AMGP Rest. Corp.*,
    17-CV-4870-KAM-SJB, 2018 U.S. Dist. LEXIS 225400 (E.D.N.Y. June 5, 2018)...............12

*Schumacher v. White*,
    429 B.R. 400 (E.D.N.Y. 2010) ..............................................................................................5

*Signature Bank v. Ahava Food Corp.*,
    No. Civ. 3893, 2008 U.S. Dist. LEXIS 67464 (S.D.N.Y. Aug. 19, 2008) ...............................4

## STATUTES AND RULES

Section 105 of the Bankruptcy Code ...............................................................................................4

Section 362 of the Bankruptcy Code ................................................................................*Passim*

Federal Rule of Bankruptcy Procedure 7065...............................................................................11

Federal Rule of Bankruptcy Procedure 7001...............................................................................4

American Builders & Contractors Supply Co., Inc. d/b/a ABC Supply Co., Inc. ("<u>ABC</u>"), by its undersigned counsel, the Law Offices of Scott H. Bernstein LLC, hereby submit this Memorandum of Law in support of its objection (the "<u>Objection</u>") to the *Motion Pursuant to 11 U.S.C. §§ 362(a) and 105(a), to Extend the Automatic Stay to Non-Debtor Principals and for Such Other and Further Relief as the Court Deems Just and Proper* [Docket No. 14] (the "<u>Motion to Extend Stay</u>") filed by debtor Scionti Construction Group LLC (the "<u>Debtor</u>"). Accompanying this Memorandum of Law is the *Declaration of Scott H. Bernstein, Esq.* ("<u>Bernstein Decl.</u>") with exhibits and the *Declaration of Amanda Badillo* (the "<u>Badillo Decl.</u>").

## I.    FACTUAL BACKGROUND

1.    On August 26, 2020, the Debtor opened a credit account for the purchase of building materials with ABC by submitting a *Credit Application* and agreeing to ABC's *Credit Agreement* (the "<u>Credit Agreement</u>") and ABC's *Purchase Agreement Terms and Conditions of Sale*. (Bernstein Decl., ¶ 4, <u>Ex. B</u> to <u>Ex. 1</u>); (Badillo Decl., ¶ 6).

2.    Section 3 of the *Credit Application* contained a *Continuing Guaranty* (the "<u>Personal Guaranty</u>") given to ABC by the Debtor's principals, Ann Maria Ferraro and Joseph A. Scionti (collectively, the "<u>Guarantors</u>"), who in their individual capacities personally guaranteed the payment of the building materials which the Debtor acquired from ABC on credit, the payment of associated late payment charges, and the payment of ABC's attorneys' fees and costs incurred in enforcing the Credit Agreement and the Personal Guaranty. (Bernstein Decl., ¶ 5, <u>Ex. B</u> to <u>Ex. 1</u>); (Badillo Decl., ¶¶ 7-8).

3.    The Debtor defaulted under the Credit Agreement by failing to make the required payments to ABC for building materials required thereunder. (Bernstein Decl., <u>Ex. 1</u>); (Badillo Decl., ¶ 9). Thereafter, demand was duly made upon the Guarantors to remit the outstanding

balances due under the Credit Agreement, but the Guarantors failed and refused to remit such payment.  (*See id.*)

4.      On July 28, 2022, ABC commenced a litigation against the Debtor and the Guarantors in their individual capacities in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, bearing Case Number 22-003622-CI (the "Florida Action"). (Bernstein Decl., ¶ 3, Ex. 1) (Badillo Decl., ¶ 5).

5.      On April 17, 2023, the Honorable Amy Williams of the Sixth Judicial Circuit entered an *Order* granting the relief sought in the *Plaintiff's Motion to Approve Mediation Settlement Agreement and Abate Action* which was filed in the Florida Action.  (Bernstein Decl., ¶ 8, Ex. 4); (Badillo Decl., ¶ 10).  Pursuant to the Court approved Mediation Settlement Agreement dated March 29, 2023 (the "Mediation Settlement Agreement"), the (1) Debtor and the Personal Guarantors agreed and admitted that they owed the amount of $476,260.00 (the "Total Debt") to ABC which consists of unpaid invoice debt, prejudgment interest, and ABC's reasonable attorneys' fees and costs incurred in the Florida Action; (2) ABC agreed that it would accept a discounted payment in the sum of $304,000.00 in satisfaction of the Total Debt if, and only if, the Debtor and the Personal Guarantors made the discounted payment in a timely manner; and (3) the parties agreed that ABC would be entitled to entry of a final judgment in favor of ABC and against the Debtor and the Personal Guarantors in the amount of the Total Debt, less a credit for payments actually made, upon an uncured payment default.  (Bernstein Decl., ¶ 7, Ex. 3);  (Badillo Decl., ¶ 9).

6.      The Florida Action remains pending and, on April 22, 2024, ABC filed its *Motion for Judgment Per the Terms of the Mediation Settlement Agreement* following the Debtor's and

the Personal Guarantors' uncured breach of the Mediation Settlement Agreement. (Bernstein Decl., ¶ 9; Ex. 2); (Badillo Decl., ¶ 11).

7.      On May 14, 2024, the Debtor filed a *Voluntary Petition* [Docket No. 1] for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. Per the Debtor's *Declaration Pursuant to Local Bankruptcy Rule 1007-2* [Docket No. 9] (the "First Day Declaration"), the Debtor is not currently employed on any public construction projects, has a negative net worth of $1,834,745, and "[t]he Debtor's plan is to borrow funds in a debtor in possession [financing] facility and build out [eight undeveloped] properties [by constructing single family homes] and sell them." (Bernstein Decl., ¶¶ 12, Exhibit 5). As of the date of the filing of ABC's Objection, there is no indication on the docket of the Debtor's bankruptcy case that the Debtor has secured debtor in possession financing or is employed as a contractor on a single meaningful private project. (Bernstein Decl., ¶ 15, Exhibit 6).

## II.      THE DEBTOR'S MOTION TO EXTEND THE AUTOMATIC STAY

8.      By the Debtor's Motion to Extend Stay, the Debtor seeks to extend the automatic stay to the Personal Guarantors and to prevent ABC from realizing on it claims against the Personal Guarantors on account of their independent liability under the Personal Guaranty they gave to ABC. As explained below, the Debtor's Motion to Extend Stay should be denied because the Debtor has not demonstrated with clear and convincing evidence the entitlement to the extraordinary relief requested.

9.      The filing of a bankruptcy petition operates as an automatic stay of any collection activity arising from pre-petition claims against a debtor, a debtor's property, and the property of the debtor's bankruptcy estate. *See* 11 U.S.C. § 362(a). The general rule is that the automatic stay "only protects the debtor and does not extend injunctive coverage to non-debtor third parties,"

3

including equity shareholders and principals of a corporate debtor or a limited liability company. *In re Autobahn Classics*, 29 B.R. 625, 628 (Bankr. S.D.N.Y. 1983). The automatic stay "can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287-88 (2nd Cir. 2003).

### III.    LEGAL ARGUMENT

**A.    The Debtor's Motion to Extend the Automatic Stay Should be Denied Because the Debtor Failed to Commence an Adversary Proceeding.**

10.     "An injunction is sought by a debtor under section 105 to stay actions against non-debtors, the relief must be sought through an adversary proceeding under Fed. R. Bankr. P. 7001." *In re Residential Capital, LLC*, 480 B.R. 529, 537 (Bankr. S.D.N.Y. 2012); *see also Signature Bank v. Ahava Food Corp.*, No. Civ. 3893, 2008 U.S. Dist. LEXIS 67464, **5-6 (S.D.N.Y. Aug. 19, 2008) (stating that "to seek [injunctive relief under 105(a)] the debtor must file an adversary proceeding in the Bankruptcy Court"); *In re Hillsborough Holdings Corp.*, 130 B.R. 603, 606 (Bankr. M.D. Fl. 1991) ("On the other hand, if the debtor seeks protection under section 105 of the Code, the debtor must commence an adversary proceeding"). Consequently, because the Debtor has not commenced an adversary proceeding under Federal Rule of Bankruptcy Procedure 7001, the Debtor's motion to extend the automatic stay should be denied for this reason alone.

**B.    The Debtor's Motion to Extend the Automatic Stay Should be Denied Because the Personal Guarantors' Liability to ABC is Separate and Independent from the Debtor's Liability to ABC in the Florida Action.**

11.     The automatic stay should not be extended where the non-debtor "is independently liable as, for example, where the debtor and another are joint tortfeasors or where the nondebtor's liability rests upon his own breach of duty." *A.H. Robins Co., Inc.*, 788 F.3d 994, 999-1000 (4th Cir. 1986). Similarly, "[a] Section 362 stay is not ordinarily extended to entities such as sureties,

guarantors, co-obligors, or others with a similar legal or factual nexus to the Chapter 11 debtor." *CDS Bus. Servs., Inc. v. H.M.C. Inc.*, 19-CV-05759 (JMA) (LGD), 2023 U.S. Dist. LEXIS 74586 (E.D.N.Y. April 28, 2023) (holding that "the automatic stay does not preclude this case from proceeding against DiPietro as guarantor") (internal quotation marks and citation omitted); *see also Schumacher v. White*, 429 B.R. 400, 407 (E.D.N.Y. 2010) ("The Bankruptcy Code contemplates that creditors will be able to proceed against the guarantors and codebtors notwithstanding the automatic stay on the property of the estate . . . .") (internal quotations and citation omitted).

12.     Here, the Debtor mistakenly argues that the Florida Action (1) is "based on [a] contract[] with the Debtor only and the alleged default of the Debtor" and (2) "[t]here are no independent causes of action against the [Personal Guarantors] and they are not being sued on guarantees." (Motion to Extend Stay, p. 5).  In actuality, ABC's claims against the non-bankrupt Personal Guarantors are based on the Personal Guaranty in favor of ABC which was executed by the Personal Guarantors in their individual capacities.  (Bernstein Decl., ¶¶ 3, 5-6, Ex. B to Ex. 1).

13.     Applying the case law cited by the Debtor, *Queenie v. Nygard, supra*, 321 F.3d at 287-88 (Motion to Extend Stay, p. 4) and *In re Nuovo Ciao Di LLC*, No. 23-10068 (JPM), 2023 Bankr. LEXIS 2335, **12-13 (Bankr. S.D.N.Y. Sept. 22, 2023) (Motion to Extend Stay, p. 5), the automatic stay should not be applied to the non-bankrupt Personal Guarantors.  In addition, in the instructive case of *Aetna Cas. & Sur. Co. v. Namrod Dev. Corp.*, 140 B.R. 56, 60 (S.D.N.Y. 1992), the district court refused to extend the automatic stay to bar litigation against personal guarantors possessing rights of indemnity from the debtor because the litigation was not a "transparent attempt[] to sue corporate officers for acts done by the officers as representatives of the corporation," but instead "result[ed] from their personal guarantees."  The district court added that

5

"[t]he very purpose of having defendants personally guarantee the . . . bonds was to provide an alternative avenue of recovery in case payment from the [debtor] was not forthcoming." *Id*. The same principle should be applied here. Because the Florida Action is an attempt to enforce a Personal Guaranty which was obtained for consideration, particularly one which induced ABC (a building supply company) to extend credit to a contractor (Badillo Decl., ¶ 8), and is not merely a veiled attempt to collect against the Debtor or against the Debtor's members for actions taken solely in their official capacities, the automatic stay should not be extended to preclude or delay the prosecution of the Florida Action against the Personal Guarantors.

14.    Moreover, the Personal Guarantors have already admitted in the Mediation Settlement Agreement their liability to ABC under the Personal Guaranty and the Honorable Amy Williams of the Sixth Judicial Circuit entered an Order approving the Mediation Settlement Agreement. (Bernstein Decl., ¶¶ 7-8, Exs. 3 and 4). The State Court established the default of the Personal Guarantors under the Personal Guaranty given to ABC and the amount of the Total Debt owed by the Personal Guarantors to ABC. (*See id*). The non-bankrupt Personal Guarantors and the Debtor cannot relitigate these issues in the Bankruptcy Court. Consequently, the automatic stay should not be extended to the Personal Guarantors because their liability in their individual capacities to ABC under the Personal Guaranty is separate and independent from the Debtor's liability to ABC.

**C.    The Debtor's Motion to Extend the Automatic Stay Should be Denied Because the Debtor Will Not be Harmed Financially by the Florida Action.**

15.    The Debtor's next argument in favor of applying the automatic stay to the non-bankrupt Personal Guarantors is a highly speculative argument that there will be an "immediate adverse economic impact" on the Debtor's reorganization. (Motion to Extend Stay, pp. 5-6). Indeed, the Debtor argues that there will be an "immediate adverse economic impact" on the

6

Debtor's reorganization because the Personal Guarantors are entitled to indemnity from the Debtor. (*See id*.) However, the indemnity contained within the Debtor's operating agreement does <u>not</u> cover the Personal Guarantors' liability under their Personal Guaranty given to ABC. *See Debtor's Operating Agreement* [Docket No. 14-4], X.B. ("To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement . . . .").

16.     Here, the Personal Guaranty is an independent source of liability stemming from the Personal Guarantors' own breaches of the Personal Guaranty in their individual capacities and, therefore, the indemnity contained within the Debtor's operating agreement does not establish an "immediate adverse economic consequence" for the Debtor's estate should ABC succeed in obtaining a judgment in the Florida Action against the Personal Guarantors. Indeed, assuming *arguendo* that the Personal Guarantors are entitled to indemnity from the Debtor (which they are not), if ABC succeeds in enforcing the Personal Guaranty it would only result in the replacement of one unsecured creditor (*i.e.*, ABC) with another unsecured creditor (*i.e.*, the Personal Guarantors). There is no evidence that the Personal Guarantors, as substituted creditors, would have a claim senior in priority to ABC as the replaced creditor. *See Chicago Title Ins. Co. v. Lerner*, 435 B.R. 732, 736-37 (Bankr. S.D. Fla. 2010) (finding that there would be no "adverse effect [of] enforcement of the guaranty against defendants" because the effect of the judgment would be to "replace one creditor with another"); *see also In re Amfesco Industries, Inc.*, 81 B.R. 777, 784-85 (Bankr. E.D.N.Y. 1988) (recognizing that corporate directors' indemnification claims

are general, unsecured claims against a debtor).  Because there are no "immediate adverse economic consequences" for the Debtor's estate, the Debtor's motion to extend the automatic stay to the Personal Guarantors should be denied in the entirety.

        **D.**      **The Debtor's Motion to Extend the Automatic Stay Should be Denied Because the Continuation of the Florida Action Will Not Meaningfully Impact on the Debtor's Operations Which Lack Financing and Lack Meaningful <u>Projects for Which the Debtor is Employed as a Contractor.</u>**

        17.      The Debtor mistakenly contends that the automatic stay should be extended to the non-bankrupt Personal Guarantors to prevent the Florida Action from interfering with the Personal Guarantors' operations of the Debtor's business.  (Motion to Extend Stay, pp. 5, 7).  If the Debtor had debtor in possession financing to develop the Debtor's vacant real estate into single family homes or had any meaningful clients for non-Debtor owned projects (*see* Bernstein Decl., <u>Ex. 5</u> (First Day Declaration)), then this argument might make sense.  In actuality, the Debtor does not have debtor in possession financing and is not operating in any meaningful fashion after having lost its government contract work at Camp Lejeune, North Carolina and concluding its reconstruction projects in  Puerto Rico and St. Croix for damages after hurricane Irma.  (*See id.*). The amount of time and effort needed to "operate" undeveloped lots of vacant land is extremely low, and defending the Florida Action in which the Personal Guarantors have already admitted liability to ABC and agreed in the Mediation Settlement Agreement to entry of the final judgment in favor of ABC in the event of an uncured payment default should not prevent them from performing their minimal functions for the Debtor.

        18.      The Personal Guarantors' liability to ABC was admitted in an amount certain in the Court-approved Mediation Settlement Agreement and is already the subject of ABC's *Motion for Judgment Per the Terms of the Mediation Settlement Agreement* following the Debtor's and the Personal Guarantors' breaches of the Mediation Settlement Agreement.  (Bernstein Decl., ¶¶ 7, 9;

Exs. 2-4); (Badillo Decl., ¶¶ 9, 11).  Here, the Personal Guarantors should not be burdened by defending the Florida Action in which they already admitted liability and agreed to entry of judgment in an expedited fashion following an uncured default under the Mediation Settlement Agreement.  In similar circumstances, the Bankruptcy Court has not hesitated to deny a debtor's motion to extend the automatic stay to the debtor's non-bankrupt principals who are independently liable on their personal guaranty given to a creditor.  *See In re Nuovo Ciao Di LLC, supra*, 2023 Bankr. LEXIS 2335, **12-17 (Motion to Extend Stay, p. 5) (observing that the Debtors "Properties are currently vacant and do not require significant upkeep or tenant relations").  Consequently, the Debtor's motion to extend the automatic stay to the Personal Guarantors should be denied.

      **E.**    **The Debtor's Motion to Extend the Automatic Stay Should be Denied Because The Florida Action Against the Personal Guarantors Will Not Impact on the <u>Debtor's Ability to Secure Funding for its Reorganization Efforts</u>.**

      19.    The Debtor argues without any explanation – let alone competent, admissible evidence – that the Florida Action "will significantly if not totally extinguish the Debtor's ability to generate funding . . . to complete and ultimately sell the Debtor's" properties which are currently undeveloped land.  (Motion to Extend Stay, p. 7).  In making this argument the Debtor cites to *In re United Health Care Org*., 210 B.R. 228, 233 (S.D.N.Y. 1997) (Motion to Extend Stay, p. 7) a case involving non-bankrupt principals of the debtor who were contractually obligated to fund a settlement of claims against the debtor's estate and who committed to mortgage their real estate to obtain the necessary funds.  Likewise, in *In re Lazarus Burman Associates*, 161 B.R. 891 (Bankr. E.D.N.Y. 1993), the non-bankrupt third parties were general partners in the debtors who had already committed funding to the debtors in an amount between $1 million to $1.6 million to assist in the debtors' restructuring of their loans.   Here, in stark contrast, "[t]he Debtor's plan is to borrow funds in a debtor in possession [financing] facility and build out [eight undeveloped] properties [by constructing single family homes] and sell them."  (Bernstein Decl., ¶ 12, <u>Exhibit</u>

5 (Debtor's First Day Declaration)).  Accordingly, the Debtor's motion to extend the automatic

stay to the Personal Guarantors should be denied because there is no evidence that the continuation

of the Florida Action will impact on the Debtor's ability to secure funding for its reorganization

efforts.

> **F.**      **The Debtor's Requested Injunction Should be Denied Because the Debtor Has
> Not Satisfied its Burden to Establish by Clear and Convincing Evidence that
> the Extraordinary Relief Sought is Warranted.**

20.      Case law is clear that the automatic stay may only be extended to protect non-

debtors where such relief is "necessary to protect the debtor's reorganization," and where the

lawsuit sought to be stayed is "sufficiently likely to have a material effect upon . . . reorganization

efforts."  *Gray v. Hirsch*, 230 B.R. 239, 243 (S.D.N.Y. 1999) (Motion to Extend Stay, p. 6).   It is

not enough for the movant to show some limited risk, or that there is a theoretical threat to the

reorganization, because it is always the case that a lawsuit against principals of the Debtor *could*

have some *effect* on the reorganization.  Rather, and in keeping with the principle that extending

the stay to non-debtors is extraordinary relief, the party seeking the extension of the stay must put

forth some evidence demonstrating an actual impact upon, or threat, to the reorganization efforts

if the stay is not extended.  *See id*. at 243-244.

21.      "[E]xtensions of the stay to protect non-debtor parties are the exception, not the

rule, and are generally not favored."   *In re FPSDA I, LLC*, Nos. 10-BR-75439, 12-AP-08032,

2012 Bankr. LEXIS 5928,  **27-28 (E.D.N.Y. Bankr. Dec. 26, 2012); *see also CAE Industries

Ltd. v. Aerospace Holdings Co.*, 116 B.R. 31, 32 (S.D.N.Y. 1990) (Debtor's Motion to Extend

Stay, p. 6) (recognizing that automatic "stay is not ordinarily extended to entities such as sureties,

guarantors, co-obligors, or others with a similar legal or factual nexus to the Chapter 11 debtor")

(internal quotation marks and citation omitted). Thus, the Debtor as the movant must show by

"clear and convincing evidence that extension of the automatic stay is warranted."  *In re FPSDA*

*I, LLC*, *supra*, 2012 Bankr. LEXIS 5928, **27-28 (*citing Millard v. Developmental Disabilities Institute, Inc.,* 266 B.R. 42, 45 (Bankr. E.D.N.Y. 2001) ("While it is true that defending this case will necessarily take some of defendant Veteri's time away from his reorganization duties, this case is not so complex as to require an inordinate amount of that time"); *Mokuba N.Y. LLC v. Pitts (In re Pitts)*, Case No. 808-74860-reg, Adv. Proc. No. 809-8230-reg, 2009 Bankr. LEXIS 4023, *23 (Bankr. E.D.N.Y. Dec. 8, 2009) ("The burden is on the moving party to show by clear and convincing evidence that injunctive relief is warranted").

22.    The Debtor has utterly failed to meet this burden and show why it is entitled to an exception to the general rule.  The Debtor does not, and cannot, establish with competent, admissible evidence "immediate adverse economic consequences" for the Debtor's estate or any "irreparable injury" to the Debtor's estate should ABC succeed in obtaining a judgment in the Florida Action against the Personal Guarantors.  *See* Federal Rule of Bankruptcy Procedure 7065; *see also Kamerling v. Massanari*, 295 F.3d 206, 214 (2nd Cir. 2002) (holding that a showing of irreparable harm is "perhaps the single most important prerequisite for the issuance of a preliminary injunction") (internal quotation marks and citation omitted).  Nor does the Debtor's operating agreement evidence an entitlement on the part of the Personal Guarantors to an absolute indemnity from the Debtor for any judgment entered against them in the Florida Action.  In fact, the Personal Guaranty is an independent source of liability stemming from the Personal Guarantors' own breach of the Personal Guaranty given to ABC.

23.    Similarly, the Debtor's conclusory allegations of financial harm, a negative impact on the Debtor's operations, and negative impact on the Debtor's effort to obtain financing for the Debtor's reorganization fall short of the required evidentiary showing that the Debtor must make in order to justify an extension of the stay to the non-bankrupt Personal Guarantors.  *See, e.g.,*

*FPSDA II, LLC v. Larin (In re FPSDA I, LLC),* Case No. 10-75439, Adv. Pro. No. 12-08032, 2012 Bankr. LEXIS 5906, *1 (Bankr. E.D.N.Y. Dec. 21, 2012) ("Rather, and in keeping with the principle that extending the stay to non-debtors is *extraordinary* relief, the party seeking extension of the stay must put forth real evidence demonstrating an actual impact upon, or threat to, the reorganization efforts if the stay is not extended") (emphasis in original); *Rodriguez v. AMGP Rest. Corp.*, 17-CV-4870-KAM-SJB, 2018 U.S. Dist. LEXIS 225400, * 5 (E.D.N.Y. June 5, 2018) (holding that the non-bankrupt defendants' "conclusory and generic allegations" about the potential impact on the bankruptcy proceeding did not warrant an extension of the automatic stay); *Hernandez v. Immortal Rise, Inc.*, No. 11-CV-4360, 2014 U.S. Dist. LEXIS 33823, * 14 (E.D.N.Y. Mar. 13, 2014) (denying request to extend the bankruptcy stay "because they provide no real evidence demonstrating an actual impact upon, or threat to, [Debtor's] reorganization efforts if the stay is not extended") (internal quotation marks and citation omitted).

24.    Moreover, although the Debtor's bankruptcy was filed on May 14, 2024, the Debtor has not taken any significant steps toward a reorganization.  There is no proposed Chapter 11 plan or any indication that the Debtor can fund a successful reorganization.  Nor has the Debtor satisfied its burden to show that the "balance of hardships tips decidedly in its favor." *FPSDA II, v. Larin*, *supra*, 2012 Bankr. LEXIS 5906, * 23.   Finally, the "public interest " prong does not favor the Debtor in that the Personal Guarantors have not filed for bankruptcy and do not deserve the protection of the Bankruptcy Code.  Accordingly, the automatic stay should not be extended to the Personal Guarantors and the Court should not enjoin ABC from pursuing its remedies under the Personal Guaranty in the Florida Action.

## IV.    <u>CONCLUSION</u>

**WHEREFORE**, for the foregoing reasons, American Builders & Contractors Supply Co., Inc. d/b/a ABC Supply Co., Inc. respectfully requests that the Court enter an Order denying the Debtor's motion to extend the automatic stay to non-bankrupt Ann Maria Ferraro and Joseph A. Scionti in its entirety and granting such other and further relief in favor of American Builders & Contractors Supply Co., Inc. d/b/a ABC Supply Co., Inc. as the Court deems just, proper and equitable.

Dated: Roseland, New Jersey                Respectfully submitted,
           June 14, 2024

                                                      LAW OFFICES OF SCOTT H. BERNSTEIN LLC
                                                      *Attorney for American Builders & Contractors Supply Co.,*
                                                      *Inc. d/b/a ABC Supply Co., Inc.*

                                                       By: */s/ Scott H. Bernstein*
                                                             Scott H. Bernstein
                                                             101 Eisenhower Parkway, Suite #300
                                                             Roseland, New Jersey 07068
                                                             Telephone: (862) 245-2667
                                                             scott@scottbernsteinlaw.com

## <u>CERTIFICATE OF SERVICE</u>

 I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on June 14, 2024 with the Clerk of Court using CM/ECF.   I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Scott H. Bernstein*   
Scott H. Bernstein
