IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:                                                    CHAPTER 11

SCIONTI CONSTRUCTION GROUP LLC

                DEBTOR.                          CASE No.  24-17612-RAM

_____/

**MOTION TO LIFT THE AUTOMATIC STAY, OR ALTERNATIVELY,
TO COMPEL THE DEBTOR TO PROVIDE ADEQUATE PROTECTION PAYMENTS, AND
<u>REQUEST FOR EXPEDITED HEARING ON NOVEMBER 11, 2024</u>**
Subject Property:  9162 Golfview Drive, Dunnellon, FL 34434

COMES NOW, Shorecrest Investment Fund LLC, and its Successors and/or Assigns ("Secured Creditor"), by and through its undersigned counsel moves this Honorable Court to lift the automatic stay herein and requests adequate protection pursuant to 11 U.S.C § 362(d) on the following grounds:

1. On May 14, 2024 (the "Petition Date"), the Debtor, Scionti Construction Group, LLC (the "Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code before the United States Bankruptcy Court for the Southern District of New York in the case styled as *In re Scionti Construction Group, LLC*, Case No. 24-17612 (the "Bankruptcy Case").

2. On July 26, 2024, the Bankruptcy Court entered an Order transferring the Bankruptcy Case to the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court").

3. On July 25, 2024, the Secured Creditor timely filed Proof of Claim No. $216,978.75 (the "Claim").  A true and correct copy of the Claim is attached and incorporated by reference herein as Exhibit A.

4. Attached to the Claim is a copy of a Promissory Note which was executed and delivered to the payee named therein to evidence a just debt.  Said Note is secured by a Mortgage, a copy of

which is also attached to the Claim which encumbers real property located at  9162 Golfview

Drive, Dunnellon, FL 34434 (the "Property").

5. At this time, the Property consists of vacant lot and the Debtor has failed to make significant

progress with construction to develop the Property and increase its value.

6. The Property was purchased for approximately $21,000.00 around March 2022.

7. As a result of the failure to develop the Property, the Secured Creditor is significantly under

secured.

8. Section 362(d)(1) of the Bankruptcy Code provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from
the stay provided under subsection (a) of this section, such as by terminating, annulling,
modifying, or conditioning such stay- (1) for cause, including the lack of adequate protection
of an interest in property of such party in interest…

9. As set forth in the Claim, the agreements and covenants in the Note and Mortgage have been

breached in that the payments of monthly installments of principal and interest due and

payable on May 1, 2023 and all subsequent payments have not been made.

10. The automatic stay provisions of Section 362 of the Bankruptcy Code should be lifted or

modified in order to permit Secured Creditor to enforce its rights under the Note and Mortgage

including Secured Creditor's right to commence or conclude proceedings to foreclose the

Mortgage.

11. Relief from the stay should be granted for cause as contemplated by Section 362 of the

Bankruptcy Code on account of, without limitation, the following reasons:

a) The Debtor is in default on the obligation to Secured Creditor as evidenced by the attached

Note and Mortgage.

b) The Debtor has failed to make the payment due on May 1, 2023 and all subsequent payments and such default is causing a steady increase in the indebtedness owed to Secured Creditor under the Note and Mortgage.

c) The Debtor continues to possess and use the collateral, subjecting the collateral to depreciation and risk of loss, without making any monthly payments.

d) Secured Creditor lacks adequate protection for its interest in the collateral.

e) The Debtor does not has any equity in the Property.

f) The facts as stated above constitute unreasonable delay by the Debtors that is prejudicial to the Secured Creditor, and constitutes a lack of adequate protection of Secured Creditor's interest in the property encumbered by the Note and Mortgage.

12. Secured Creditor respectfully requests an expedited hearing on this Motion and that it is heard On November 21, 2024 with the other matters pending before this Court in this Bankruptcy Case.

13. Secured Creditor has incurred attorney's fees of $1,050.00 and costs in the amount of $199.00 as a result of the necessity of filing this Motion. Secured Creditor's attorney's fees and costs are recoverable as part of the debt pursuant to the loan documents.

14. Secured Creditor respectfully requests that the Court waive the fourteen (14) day stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001(a)(3), so that Secured Creditor can pursue its *in rem* remedies without further delay.

WHEREFORE, Secured Creditor, moves for the following:

A) An order granting relief from the stay permitting Secured Creditor to institute or conclude proceedings to foreclose the Mortgage.

B) If the Court does not see fit to grant relief from the stay as requested herein, Secured Creditor prays for an Order conditioning the continuation of the stay upon the Debtor's furnishing to Secured Creditor periodic payments under the instruments.

C) That Secured Creditor's attorney's fees and costs incurred in filing this Motion be recoverable as part of the debt pursuant to the loan documents under the remedies available therein but shall not be a personal liability of the Debtor.

D) Such other and further relief as to the Court may appear just and proper.

**Tromberg, Morris & Partners, PLLC**

**BY:** /s/ April Hosford Stone
Attorney for Secured Creditor
600 West Hillsboro Boulevard
Suite 600
Deerfield Beach, FL 33441
Telephone #: 561-338-4101
Fax #: 561-338-4077
FBN 0091388
ecf@tmppllc.com
astone@tmppllc.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 14, 2024, I electronically filed the foregoing with the Clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants listed below:

Thomas G Zeichman
2385 Executive Center Dr., Ste. 250
Boca Raton, FL 33431
tzeichman@bmulaw.com

H. Bruce Bronson, Jr.
480 Mamaroneck Avenue
Harrison, NY 10528

U.S. Trustee Southern District of Florida
Office of the US Trustee
51 S.W. 1st Ave., Suite 1204
Miami, FL 33130
USTPRegion21.MM.ECF@usdoj.gov

On November 14, 2024, a true and correct copy was mailed to the non-CM/ECF participants:

Scionti Construction Group LLC
PO Box 452700
Miami, FL 33143

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

**Tromberg, Morris & Partners, PLLC**

**BY:** /s/ April Hosford Stone
Attorney for Secured Creditor
600 West Hillsboro Boulevard
Suite 600
Deerfield Beach, FL 33441
Telephone #: 561-338-4101
Fax #: 561-338-4077
FBN 0091388
ecf@tmppllc.com
astone@tmppllc.com

# Exhibit A

<table>
<tr><td colspan="2" style="background:black;color:white"><strong>Fill in this information to identify the case:</strong></td></tr>
</table>

**Debtor 1**   Scionti Construction Group LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the Southern District of New York (White Plains)

Case number. 24-22427-shl

---

Official Form 410

# Proof of Claim
04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1:   Identify the Claim

**1. Who is the current creditor?**

Shorecrest Investment Fund, LLC c/o Synergy Consulting, LLC.

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☒ No

❑ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Shorecrest Investment Fund, LLC | Shorecrest Investment Fund, LLC |
| Name | Name |
| 11 Beach Dr SE | 11 Beach Dr SE |
| Number        Street | Number        Street |
| St. Petersburg      FL       33701 | St. Petersburg      FL       33701 |
| City        State        Zip Code | City        State        Zip Code |
| Contact Phone | Contact Phone |
| Contact Email | Contact Email |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___

**4. Does this claim amend one already filed?**

☒ No

❑ Yes. Claim number on court claims registry (if known) _____   Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No

❑ Yes. Who made the earlier filing? _____

---

Official Form 410                          **Proof of Claim**                          page 1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:    0   2   0   0 |

**7. How much is the claim?**  $ 217,126.75

Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

**9. Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a Mortgage Proof of Claim Attachment (Official Form 410-A) with this Proof of Claim.

☐ Motor vehicle

☑ Other. Describe:    9162 Golfview Drive, Dunnellon, FL 34434

**Basis for perfection:**    Recorded Deed of Trust/Mortgage/Note

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded).

**Value of property:**    $

**Amount of the claim that is secured:**    $ 216,978.75

**Amount of the claim that is unsecured:**    $    (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $ 18,724.75

Annual Interest Rate (when case was filed)    12.000   %
☑ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.    $

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property:

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ No

☑ Yes. Check one:

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_____) that applies. | $ _____ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date _____07/25/2024_____
　　　　　　　　　　MM / DD / YYYY

_____/s/ Aashmita Shravah, Esq._____
　　Signature

**Print the name of the person who is completing and signing this claim:**

| | |
|---|---|
| Name | Aashmita Shravah |
| | First name　　　　Middle name　　　　Last name |
| Title | Attorney for Secured Creditor |
| Company | Tromberg, Morris & Poulin, PLLC |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 39 Broadway, Suite 1250 |
| | Number　Street |
| | New York　　　　　　　　NY　　　10006 |
| | City　　　　　　　　State　　Zip Code |
| Contact phone | (212) 267-3550 　　Email　Ashravah@@tmppllc.com |

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof claim.  See separate instructions.**

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case number: | 24-22427-shl | Principal Balance: | $204,000.00 | Principal due: | $0.00 | Principal & interest: | $2,040.00 |
| Debtor 1: | Scionti Construction Group LLC | Interest Due: | $7,072.00 | Interest Due: | $12,670.00 | Monthly escrow: | $0.00 |
| Debtor 2: | | Prepetition fees due: | $6,054.75 | Prepetition fees due: | $6,054.75 | Private mortgage insurance: | $0.00 |
| Last 4 digits to identify: | 0200 | Escrow deficiency for funds advanced | $0.00 | Escrow deficiency for funds advanced: | $0.00 | Total monthly payment: | $2,040.00 |
| Creditor: | Shorecrest Investment Fund, LLC. | Less total funds on hand: | $0.00 | Projected escrow shortage: | $0.00 | | |
| Servicer: | Shorecrest Investment Fund, LLC. a Neverda limited liability company c/o Synergy Consulting, LLC | | | Less total funds on hand: | $0.00 | | |
| Fixed accrual/daily simple interest/other : | Fixed | Total Debt: | $217,126.75 | Total prepetition arrearage: | $18,724.75 | | |

Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal Balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/10/2023 | $0.00 | $0.00 | -$204.00 | Late Charge | 5/1/2023 | $0.00 | $0.00 | $0.00 | $0.00 | -$204.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$204.00 | $0.00 |
| 4/10/2023 | $0.00 | $0.00 | -$204.00 | | 5/1/2023 | $0.00 | $0.00 | $0.00 | $0.00 | -$204.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$408.00 | $0.00 |
| 4/13/2023 | $0.00 | $1,360.00 | $0.00 | Payment Made | 5/1/2023 | $0.00 | $0.00 | $1,360.00 | $0.00 | $0.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$408.00 | $0.00 |
| 4/13/2023 | $680.00 | $0.00 | $0.00 | Partial Payment Due | 6/1/2023 | $680.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$408.00 | $0.00 |
| 5/10/2023 | $0.00 | $0.00 | -$204.00 | Late Charge | 6/1/2023 | $680.00 | $0.00 | $0.00 | $0.00 | -$204.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$612.00 | $0.00 |
| 6/10/2023 | $0.00 | $0.00 | -$204.00 | Late Charge | 6/1/2023 | $680.00 | $0.00 | $0.00 | $0.00 | -$204.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$816.00 | $0.00 |
| 6/15/2023 | $0.00 | $2,040.00 | $0.00 | Payment Made | 6/1/2023 | $680.00 | $0.00 | $2,040.00 | $0.00 | $0.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$816.00 | $0.00 |
| 7/1/2023 | $0.00 | $2,040.00 | $0.00 | Payment Made | 8/1/2023 | $680.00 | $0.00 | $2,040.00 | $0.00 | $0.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$816.00 | $0.00 |
| 8/10/2023 | $0.00 | $2,040.00 | $0.00 | Payment Made | 9/1/2023 | $680.00 | $0.00 | $2,040.00 | $0.00 | $0.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$816.00 | $0.00 |
| 9/10/2023 | $0.00 | $0.00 | -$204.00 | Late Charge | 8/1/2023 | $680.00 | $0.00 | $0.00 | $0.00 | -$204.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$1,020.00 | $0.00 |
| 9/12/2023 | $0.00 | $2,040.00 | $0.00 | Payment Made | 10/1/2023 | $680.00 | $0.00 | $2,040.00 | $0.00 | $0.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$1,020.00 | $0.00 |
| 10/10/2023 | $0.00 | $0.00 | -$204.00 | Late Charge | 10/3/2023 | $680.00 | $0.00 | $0.00 | $0.00 | -$204.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$1,224.00 | $0.00 |
| 10/31/2023 | $0.00 | $2,040.00 | $0.00 | Payment Made | 11/1/2023 | $680.00 | $0.00 | $2,040.00 | $0.00 | $0.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$1,224.00 | $0.00 |
| 11/10/2023 | $0.00 | $0.00 | -$204.00 | Late Charge | 11/1/2023 | $680.00 | $0.00 | $0.00 | $0.00 | -$204.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$1,428.00 | $0.00 |
| 11/30/2023 | $0.00 | $2,040.00 | $0.00 | Payment Made | 12/1/2023 | $680.00 | $0.00 | $2,040.00 | $0.00 | $0.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$1,428.00 | $0.00 |
| 12/29/2023 | $0.00 | $2,040.00 | $0.00 | Payment Made | 1/1/2024 | $680.00 | $0.00 | $2,040.00 | $0.00 | $0.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$1,428.00 | $0.00 |
| 1/31/2024 | $0.00 | $2,040.00 | $0.00 | Payment Made | 2/1/2024 | $680.00 | $0.00 | $2,040.00 | $0.00 | $0.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$1,428.00 | $0.00 |
| 2/1/2024 | $2,040.00 | $0.00 | $0.00 | Payment Due | 2/1/2024 | $2,720.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$1,428.00 | $0.00 |
| 2/29/2024 | $0.00 | $250.00 | $0.00 | Payment Made | 2/1/2024 | $2,720.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$1,428.00 | $0.00 |
| 2/29/2024 | $1,790.00 | $0.00 | $0.00 | Partial Payment Due | 2/1/2024 | $4,510.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$1,428.00 | $0.00 |
| 3/1/2024 | $2,040.00 | $0.00 | $0.00 | Payment Due | 2/1/2024 | $6,550.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$1,428.00 | $0.00 |
| 3/10/2024 | $0.00 | $0.00 | -$204.00 | Late Charge | 2/1/2024 | $6,550.00 | $0.00 | $0.00 | $0.00 | -$204.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$1,632.00 | $0.00 |
| 4/1/2024 | $2,040.00 | $0.00 | $0.00 | Payment Due | 2/1/2024 | $8,590.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$1,632.00 | $0.00 |
| 4/10/2024 | $2,040.00 | $0.00 | $0.00 | Payment Due | 2/1/2024 | $10,630.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$1,632.00 | $0.00 |
| 5/1/2024 | $2,040.00 | $0.00 | $0.00 | Payment Due | 2/1/2024 | $12,670.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$1,632.00 | $0.00 |
| 5/10/2024 | $0.00 | $0.00 | -$204.00 | Late Charge | 2/1/2024 | $12,670.00 | $0.00 | $0.00 | $0.00 | -$204.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$1,836.00 | $0.00 |
| 5/14/2024 | $0.00 | $0.00 | -$343.75 | Attorney Fees | 2/1/2024 | $12,670.00 | $0.00 | $0.00 | $0.00 | -$343.75 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$2,179.75 | $0.00 |
| 5/14/2024 | $0.00 | $0.00 | -$3,500.00 | Attorney Fees | 2/1/2024 | $12,670.00 | $0.00 | $0.00 | $0.00 | -$3,500.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$5,679.75 | $0.00 |
| 5/14/2024 | $0.00 | $0.00 | -$300.00 | Wiring Satasfaction Fee | 2/1/2024 | $12,670.00 | $0.00 | $0.00 | $0.00 | -$300.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$5,979.75 | $0.00 |
| 5/14/2024 | $0.00 | $0.00 | -$75.00 | Payoff | 2/1/2024 | $12,670.00 | $0.00 | $0.00 | $0.00 | -$75.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$6,054.75 | $0.00 |
| 5/14/2024 | $0.00 | $0.00 | $0.00 | BK Filed | 2/1/2024 | $12,670.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $204,000.00 | $0.00 | $0.00 | -$6,054.75 | $0.00 |

# Promissory Note

Date - April _10_, 2023

Amount - S204,000.00                                     Maturity Date - April , 2025

| Lender: | Borrower: |
|---|---|
| Shorecrest Investment Fund, LLC.<br>a Nevada limited liability company<br>c/o Synergy Consulting, LLC<br>11 Beach Dr SE<br>St. Petersburg, Florida 33701 | Scionti Construction Group, LLC.<br>a Florida limited liability company<br>1210 Alfonso Ave<br>Coral Gables, Florida 33146 |

FOR VALUE RECEIVED, the undersigned Borrower unconditionally (and jointly and severally, if more than one) promises to pay to the order of Lender, its successors and assigns, without setoff, at its offices indicated at the beginning of this Note, or at such other place as may be designated by Lender, the principal amount of TWO HUNDRED FOUR THOUSAND and NO/100 Dollars ($204,000.00), or so much thereof as may be advanced from time to time in immediately available funds, together with interest computed daily on the outstanding principal balance hereunder, at an annual interest rate, and in accordance with the payment schedule, indicated below.

1.    **Rate.** The interest rate stated herein shall be Twelve and 00/100 percent (12%).

Notwithstanding any provision of this Note, Lender does not intend to charge and Borrower shall not be required to pay any amount of interest or other charges in excess of the maximum permitted by the applicable law of the State of Florida. Any payment in excess of such maximum shall be refunded to Borrower or credited against principal, at the option of Lender.

2.    **Accrual Method.** Unless otherwise indicated, interest at the Rate set forth above will be calculated by the 365 day method.

3.    **Payment Schedule.** All payments received hereunder shall be applied first to the payment of any expense or charges payable hereunder or under any other loan documents executed in connection with this Note, then to interest due and payable, with the balance applied to principal, or in such other order as Lender shall determine at its option.

**Interest Only Payments.** Interest shall be paid in monthly installments of outstanding principal balance multiplied by the interest rate divided by 12, payable monthly, commencing on June 1, 2023, and continuing on the same day of each successive month, thereafter, with a final payment of all unpaid principal and accrued interest due on April 30, 2025. The payment shall be $2,040.00 per month.

**ACH PAYMENT.** The Lender in its sole and absolute discretion may require Borrower to make the monthly payments by ACH auto debit on the 1st of the month.

4.    **Waivers, Consents and Covenants.** Borrower, any indorser or guarantor hereof, or any other party hereto (individually an "Obligor" and collectively "Obligors") and each of them jointly and severally: (a) waive presentment, demand, protest, notice of demand, notice of intent to accelerate, notice of acceleration of maturity, notice of protest, notice of nonpayment, notice of dishonor, and any other notice required to be given under the law to any Obligor in connection with the delivery, acceptance, performance, default or enforcement of this Note, any indorsement or guaranty of this Note, or any other documents executed in connection with this Note or any other note or other loan documents now or hereafter executed in connection with any obligation of Borrower to Lender (the "Loan Documents"); (b) consent to all delays, extensions, renewals or other modifications of this Note or the Loan Documents, or waivers of any term hereof or of the Loan Documents, or release or discharge by Lender of any of Obligors, or release, substitution or exchange of any security for the payment hereof, or the failure to act on the part of Lender, or any indulgence shown by Lender (without notice to or further assent from any of Obligors), and agree that no such action, failure to act or failure to exercise any right or remedy by Lender shall in any way affect or impair the obligations of any Obligors or be construed as a waiver by Lender of, or otherwise affect, any of Lender's rights under this Note, under any indorsement or guaranty of this Note; and (c) agree to pay, on demand, all costs and expenses of collection or defense of this Note or of any indorsement or guaranty hereof and/or the enforcement or defense of Lender's rights with respect to, or the administration, supervision, preservation, or protection of, or realization upon, any property securing payment hereof, including, without limitation, reasonable attorney's and paralegal's fees, including fees related to any suit, mediation or arbitration proceeding, out of court payment agreement, trial, appeal, bankruptcy proceedings or other proceeding, in such amount as may be determined reasonable by any arbitrator or court, whichever is applicable.

5.    **Indemnification.** Obligors agree to promptly pay, indemnify and hold Lender harmless from all State and Federal taxes of any kind and other liabilities with respect to or resulting from the execution and/or delivery of this Note or any advances made pursuant to this Note. If this Note has a revolving feature and is secured by a mortgage, Obligors expressly consent to the deduction of any applicable taxes from each taxable advance extended by Lender.

6.    **Prepayments.** Prepayments may be made in whole or in part at any time. All prepayments of principal shall be applied in the inverse order of maturity, or in such other order as Lender shall determine in its sole discretion.

**Prepayment Penalty.** Prepayment penalty, whether prepayment is made in whole or in part, shall be equal to the first six (6) months of interest on the loan (i.e.$12,240.00), as computed on the original amount of this note as stated above, less any months of interest already paid. For example, if a principle payment is received in the second (2nd) month of the loan, the prepayment penalty shall equal four (4) months interest payments (6 months prepayment penalty less 2 months interest already paid). Any prepayment thereafter shall not be subject to a prepayment penalty.

7.    **Delinquency Charge.** To the extent permitted by law, a delinquency charge may be imposed in an amount not to exceed ten percent (10%) of any payment that is more than ten (10) days late.

8.    **Events of Default.** The following are events of default hereunder: (a) the failure to pay or perform any obligation, liability or indebtedness of any Obligor to Lender as and when due (whether upon demand, at maturity or by acceleration) as set forth in this Note or in the Mortgage; (b) the death of any Obligor (if an individual); (c) the resignation or withdrawal of

any partner or a material owner/guarantor of Borrower, as determined by Lender in its sole discretion; (d) the commencement of a proceeding against any Obligor for dissolution or liquidation, the voluntary or involuntary termination or dissolution of any Obligor or the merger or consolidation of any Obligor with or into another entity; (e) the insolvency of, the business failure of, the appointment of a custodian, trustee, liquidator or receiver for or for any of the property of, the assignment for the benefit of creditors by, or the filing of a petition under bankruptcy, insolvency or debtor's relief law or the filing of a petition for any adjustment of indebtedness, composition or extension by or against any Obligor; (f) the determination by Lender that any representation or warranty made to Lender by any Obligor or otherwise is or was, when it was made, untrue or materially misleading; (g) the failure of any Obligor to timely deliver such financial statements, including tax returns, other statements of condition or other information, as Lender shall request from time to time; (h) the entry of a judgment against any Obligor which Lender deems to be of a material nature, in Lender's sole discretion; (i) the seizure or forfeiture of, or the issuance of any writ of possession, garnishment or attachment, or any turnover order for any property of any Obligor; (k) the determination by Lender that it is insecure for any reason; (j) the determination by Lender that a material adverse change has occurred in the financial condition of any Obligor; or (l) the failure of Borrower's business to comply with any law or regulation controlling its operation.

**9. Remedies upon Default.** Whenever there is a default under this Note (a) the entire balance outstanding hereunder and all other obligations of any Obligor to Lender (however acquired or evidenced) shall, at the option of Lender, become immediately due and payable and any obligation of Lender to permit further borrowing under this Note shall immediately cease and terminate, and/or (b) to the extent permitted by law, the Rate of interest on the unpaid principal shall be increased at Lender's discretion up to the maximum rate allowed by law, or if none, 18% per annum (the "Default Rate"). The provisions herein for a Default Rate shall not be deemed to extend the time for any payment hereunder or to constitute a "grace period" giving Obligors a right to cure any default. At Lender's option, any accrued and unpaid interest, fees or charges may, for purposes of computing and accruing interest on a daily basis after the due date of the Note or any installment thereof, be deemed to be a part of the principal balance, and interest shall accrue on a daily compounded basis after such date at the Default Rate provided in this Note until the entire outstanding balance of principal and interest is paid in full. Upon a default under this Note, Lender is hereby authorized at any time, at its option and without notice or demand, to set off and charge against any deposit accounts of any Obligor (as well as any money, instruments, securities, documents, chattel paper, credits, claims, demands, income and any other property, rights and interests of any Obligor), which at any time shall come into the possession or custody or under the control of Lender or any of its agents, affiliates or correspondents, any and all obligations due hereunder. Additionally, Lender shall have all rights and remedies available at law or in equity. Any judgment rendered on this Note shall bear interest at the highest rate of interest permitted pursuant to Chapter 687, Florida Statutes.

**10. Garnishment and Payoff Request.** I consent to the issuance of a continuing writ of garnishment or attachment against my disposable earnings, in accordance with Florida Statute §222.11, in order to satisfy, in whole or in part, any money judgment entered in favor of Lender. Borrower agrees that the Lender may charge $35.00 per payoff request which amount may be changed at the sole and absolute discretion of Lender. This provision does not apply if the Borrower is in default.

**11. Non-waiver.** The failure at any time of Lender to exercise any of its options or any other rights hereunder shall not constitute a waiver thereof, nor shall it be a bar to the exercise of any of its options or rights at a later date. All rights and remedies of Lender shall be cumulative and may be pursued singly, successively or together, at the option of Lender. The acceptance by Lender of any partial payment shall not constitute a waiver of any default or of any of Lender's rights under this Note. No waiver of any of its rights hereunder, and no modification or amendment of this Note, shall be deemed to be made by Lender unless the same shall be in writing, duly signed on behalf of Lender; each such waiver shall apply only with respect to the specific instance involved, and shall in no way impair the rights of Lender or the obligations of Obligors to Lender in any other respect at any other time.

**12. Applicable Law, Venue and Jurisdiction.** This Note and the rights and obligations of Borrower and Lender shall be governed by and interpreted in accordance with the laws of the State of Florida. In any litigation in connection with or to enforce this Note or any indorsement or guaranty of this Note, Obligors, and each of them, irrevocably consent to and confer personal jurisdiction on the courts of the State of Florida or the United States located within the State of Florida and expressly waive any objections as to venue in any such courts. Nothing contained herein shall, however, prevent Lender from bringing any action or exercising any rights within any other state or jurisdiction or from obtaining personal jurisdiction by any other means available under applicable law. The interest rate charged on this Note is authorized by Chapter 655, Florida Statutes and Section 687.12, Florida Statutes. Time is of the essence for this Note.

**13. Partial Invalidity.** The unenforceability or invalidity of any provision of this Note shall not affect the enforceability or validity of any other provision herein and the invalidity or unenforceability of any provision of this Note or of the Loan Documents to any person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

**14. Binding Effect.** This Note shall be binding upon and inure to the benefit of Borrower, Obligors and Lender and their respective successors, assigns, heirs and personal representatives, provided, however, that no obligations of Borrower or Obligors hereunder can be assigned without prior written consent of Lender.

**15. Controlling Document.** To the extent that this Note conflicts with or is in any way incompatible with any other document related specifically to the loan evidenced by this Note, this Note shall control over any other such document, and if this Note does not address an issue, then each other such document shall control to the extent that it deals most specifically with an issue.

**16. Security.** As security for the payment of this Note, and any renewals, extensions or modifications, the Borrower executed a Mortgage of even date herewith on the real estate and other collateral as described in the Mortgage.

**17. Waiver of Jury Trial.** BY ACCEPTANCE HEREOF, BORROWER (AND ANY PARTNER OF A BORROWER) AGREES THAT NEITHER BORROWER, NOR ANY PARTNER, ASSIGNEE, SUCCESSOR, HEIR, OR LEGAL REPRESENTATIVE OF BORROWER (ALL OF WHOM ARE HEREINAFTER REFERRED TO AS THE "PARTIES") SHALL SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDINGS, COUNTERCLAIM, OR ANY OTHER LITIGATION PROCEDURE BASED UPON OR ARISING OUT OF THIS AGREEMENT OR ANY INSTRUMENT EVIDENCING, SECURING OR RELATING TO THE INDEBTEDNESS AND OTHER OBLIGATIONS EVIDENCED HEREBY, ANY RELATED AGREEMENT OR INSTRUMENT, ANY OTHER COLLATERAL FOR THE INDEBTEDNESS EVIDENCED HEREBY OR THE DEALINGS OR THE RELATIONSHIP BETWEEN OR AMONG THE PARTIES, OR ANY OF THEM. NONE OF THE PARTIES WILL SEEK TO CONSOLIDATE ANY SUCH ACTION, IN WHICH A JURY TRIAL HAS BEEN WAIVED, WITH ANY

OTHER ACTION IN WHICH A JURY TRIAL HAS NOT BEEN WAIVED. THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY NEGOTIATED BY THE PARTIES WITH LENDER AND THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS. LENDER HAS IN NO WAY AGREED WITH OR REPRESENTED TO ANY OF THE PARTIES THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

**Borrower represents to Lender that the proceeds of this loan are to be used primarily for business, commercial or agricultural purposes. Borrower acknowledges having read and understood, and agrees to be bound by, all terms and conditions of this Note and hereby executes this Note under seal as of the date here above written.**

**NOTICE OF FINAL AGREEMENT. THIS WRITTEN PROMISSORY NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

If this Note is secured by a mortgage on real property, documentary stamp taxes have been paid and affixed to the mortgage.

**EXECUTION DATE:** ___4/10/23___

**Borrower:**

**Scionti Construction Group, LLC**
**a Florida limited liability company**

By: Ann Maria Ferrao, its Manager

## GUARANTY

For value received and intending to be legally bound, the undersigned Guarantor (a) hereby unconditionally guarantees the payment of the within Note in the original principal balance of $188,000.00 payable to Note Holder, and all extensions or renewals thereof and all sums payable under or by virtue thereof, including, without limitation, all amounts of principal and interest and all expenses (including attorney's fees and costs) incurred in the collection thereof, the enforcement of rights thereunder or with respect to any security therefor and the enforcement hereof, and waive presentment, demand, notice of dishonor, protest and all other notices whatsoever; and (b) consent and agree (I) that all or any of the Collateral may be exchanged, released, surrendered or sold from time to time, (ii) that the payment of the Note, or any of the liabilities of the Mortgagor thereof may be extended or the Note renewed any number of times and for any period (whether or not longer than the original period of the Note); (iii) that the Note Holder may grant any releases, compromises or indulgences with respect to the Note or any extensions or renewals thereof or any security therefor or to any party liable thereunder or hereunder (including, but not limited to, failure or refusal to exercise one or more of the rights or remedies provided by the Note); (iv) that provisions of the Note are incorporated herein and as such are applicable to the undersigned as guarantor and further consent and agree that any of the undersigned may be sued by the Note Holder with or without joining any of the Borrowers of the Note and without first or contemporaneously suing any such other persons, or otherwise seeking or proceeding to collect from them of any of them and without first or contemporaneously undertaking to enforce any rights with respect to any security.

By: ~~Anna~~ Maria Ferrao, individually

ANN

Prepared By and Return to:
Steven W. Moore, Esquire
8240 118th Avenue North, Suite 300
Largo, Florida 33773-5014
File No: 3051-37750

<u>REAL ESTATE MORTGAGE AND ASSIGNMENT OF RENTS</u>

Date:      April _11_ 2023

Borrower:    Scionti Construction Group, LLC.
               a Florida limited liability company
               1210 Alfonso Ave
               Coral Gables, Florida 33146

Lender:      Shorecrest Investment Fund, LLC
               a Nevada limited liability company
               c/o Synergy Consulting, LLC
               11 Beach Dr SE
               St. Petersburg, Florida 33701

Amount of initial indebtedness secured by this Mortgage:

    TWO HUNDRED FOUR THOUSAND and NO/100 Dollars ($204,000.00)

Maximum principal indebtedness, including future advances, that may be secured by this Mortgage:

    TWO HUNDRED FOUR THOUSAND and NO/100 Dollars ($204,000.00)

Maturity Date: April 30, 2025

This is a Mortgage and Security Agreement (the "Mortgage"). To secure the Borrower's performance and observance of (I) all the terms, covenants, and conditions contained in a Promissory Note in an amount equal to the initial indebtedness set forth above, (the "Note"), in this Mortgage, and in a Loan Agreement (if any) between the Borrower and Lender (the "Loan Agreement") all dated today, together with all renewals, extensions, supplements, increases and modifications thereof, in whole or in part; and (ii) any future advances made by Lender to Borrower (or any of them if more than one), and (iii) all other indebtedness of Borrower (and each of them if more than one) to Lender, however and whenever incurred or evidenced, whether primary, secondary, direct, indirect, absolute, contingent, sole, joint, or several, due or to become due, or which may be hereafter contracted or acquired, whether arising in the ordinary course of business or otherwise, and for other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrower mortgages to Lender, its successors and assigns, all the following described property and any additional property acquired by Borrower in the future and subjected to the lien of this Mortgage as set forth below (collectively, the "Mortgaged Property"):

    (A) <u>Land</u>.

        PARCEL "A":    Lot 6, Block 428, Citrus Springs Unit 4, according to the Map or Plat thereof, as recorded in Plat Book 5, at Page 133, of the Public Records of Citrus County, Florida.

        PARCEL "B":    Lot 5, Block 428, Citrus Springs Unit 4, according to the Map or Plat thereof, as recorded in Plat Book 5, at Page 133, of the Public Records of Citrus County, Florida.

        PARCEL "C":    Lot 4, Block 428, Citrus Springs Unit 4, according to the Map or Plat thereof, as recorded in Plat Book 5, at Page 133, of the Public Records of Citrus County, Florida.

        PARCEL "D":    Lot 51, Block 815, of CITRUS SPRINGS UNIT 23, a Subdivision according to the Plat thereof, recorded in Plat Book 7, Page 115-133 of the Public Records of Citrus County, Florida.

        PARCEL "E":    Lot 50, Block 815, of CITRUS SPRINGS UNIT 23, a Subdivision according to the Plat thereof, recorded in Plat Book 7, Page 115-133 of the Public Records of Citrus County, Florida.

        PARCEL "F":    Lot 13, Block 1473, of CITRUS SPRINGS UNIT 27, a Subdivision according to the Plat thereof, recorded in Plat Book 9, Page 54 through 70, inclusive, of the Public Records of Citrus County, Florida.

        PARCEL "G":    Lot 12, Block 1473, of CITRUS SPRINGS UNIT 27, a Subdivision according to the Plat thereof, recorded in Plat Book 9, Page 54 through 70, inclusive, of the Public Records of Citrus County, Florida.

        PARCEL "H":    Lot 1, Block 1473, of CITRUS SPRINGS UNIT 27, a Subdivision according to the Plat

thereof, recorded in Plat Book 9, Page 54 through 70, inclusive, of the Public Records of Citrus County, Florida.

PARCEL "I": Lot 1, Block 1587, of Silver Springs Shores Unit No. 50, a Subdivision according to the Plat thereof, recorded in Plat Book J, Page 354 through 359, inclusive, of the Public Records of Marion County, Florida.

PARCEL "J": Lot 3, Block 865, of Silver Springs Shores Unit No. 32, a Subdivision according to the Plat thereof, recorded in Plat Book J, Page 276 through 285, inclusive, of the Public Records of Marion County, Florida.

PARCEL "K": Lot 9, Block 147, of Silver Springs Shores Unit No. 13, a Subdivision according to the Plat thereof, recorded in Plat Book J, Page 74 through 82, inclusive, of the Public Records of Marion County, Florida.

PARCEL "L": Lot 9, Block 1607, of Silver Springs Shores Unit No. 51, a Subdivision according to the Plat thereof, recorded in Plat Book J, Page 360 through 367, inclusive, of the Public Records of Marion County, Florida.

PARCEL "M": Lot 10, Block 1607, of Silver Springs Shores Unit No. 51, a Subdivision according to the Plat thereof, recorded in Plat Book J, Page 360 through 367, inclusive, of the Public Records of Marion County, Florida.

PARCEL "N": Lot 17, Block 1047, Silver Springs Shores Unit No. 34, according to the map or plat thereof, as recorded in Plat Book J, Page(s) 286 through 292, inclusive, of the Public Records of Marion County, Florida

Property addresses:
9162 Golfview Drive, Citrus Springs, FL 34434
9166 Golfview Drive, Citrus Springs, FL 34434
9172 Golfview Drive, Citrus Springs, FL 34434
6975 N Lynn Point , Citrus Springs, FL 34434
1587 W Riley Dr , Citrus Springs, FL 34434
11214 N Terra Cotta Dr, Citrus Springs, 34434
11222 N Terra Cotta Dr, Citrus Springs, 34434
11286 N Terra Cotta Dr, Citrus Springs, 34434
201 Emerald Loop Way Lot 1
11 Hickory Track Drive
TBD Oak Circle Lot #9 Ocala, FL 34472
Lot 9 Locust Loop Radial, Ocala, FL 34472
Lot 10 Locust Loop Radial, Ocala, FL 34472
TBD Locust Place, Ocala FL 34472

Including any and all timber, minerals, topsoil, merchantable sod, muck, peat, humus, sand and common clay (the "Land");

(B) Improvements. All buildings, structures, and other improvements of any nature situated in whole or in part upon the Land now or at any time during the terms of this Mortgage, regardless of whether physically affixed or now or hereafter severed or capable of severance from the Land (the "Improvements");

(C) Appurtenances. All easements, rights of way, gores of land, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, tenements, hereditaments and appurtenances, in any way belonging, relating, or pertaining to the Land, now or at any time during the term of this Mortgage, together with all reversions, remainders, rents, issues, and profits;

(D) Tangible Property. All Borrower's right, title and interest in and to all fixtures, machinery, equipment, tools, construction materials, equipment, and supplies, and tangible personal property, together with all replacements, repairs, and substitutions attached to the Land or the Improvements, or situated on or about the Land or the Improvements, now or at any time during the term of this Mortgage, whether physically affixed, severed or capable of severance, from the Land or Improvements, or that is in any way related to any present or future business operation or use of the Land or the Improvements (the "Tangible Property");

(E) Rents. All rents, issues, incomes and profits arising from the Land, the Improvements, or the Tangible Property, whether existing now or at any time during the term of this Mortgage, including all security deposits, amendments, modifications, replacements, extensions, renewals, or consolidations (the "Rents"); provided, however, that if Borrower is not in default under the Note, this Mortgage, or the Loan Agreement, Borrower may collect, and otherwise enjoy the benefit of all such rents, issues, incomes and profits;

(F) Proceeds. All proceeds of the conversion, (voluntary or involuntary), of any of the Mortgaged Property into cash, or other liquidated claims, and all proceeds that are payable to Borrower for injury or loss to, or the taking conversion, requisitioning or destruction of, any of the Mortgage Property, including all insurance and condemnation proceeds.

To the extent that any of the Mortgage Property is acquired with funds advanced by the Lender to the Borrower, this Mortgage constitutes a Purchase Money Mortgage.

TO HAVE AND TO HOLD the Mortgaged Property subject, however, to the terms and conditions of this Mortgage.

PROVIDED, HOWEVER, that if Borrower performs all the terms, covenants, and conditions of the Note, this Mortgage, and the Loan Agreement, then Lender shall give a release hereof in recordable form.

AND BORROWER represents to, warrants to, covenants with and agrees with Lender that:

# ARTICLE ONE
## COVENANTS AND WARRANTIES OF BORROWER

1.01  Performance of Note and Mortgage.  Borrower will perform, observe and comply with all the provisions of the Note, this Mortgage, and the Loan Agreement, and will promptly pay to Lender all principal amounts required under the Note, together with all accrued interest and all other sums required to be paid by Borrower under this Mortgage and the Loan Agreement, and without deduction or credit for taxes or other similar charges paid by the Borrower in connection with the Note, this Mortgage or the Loan Agreement.

1.02  Warranty of Title.  Borrower is well seized of an indefeasible estate in fee simple in the Land, has good and absolute title to all Tangible Property, Rents and Intangible Property, and has full right, power and lawful authority to mortgage the Mortgaged Property to Lender. The Mortgaged Property is free and clear of all liens, charges and encumbrances (other than this Mortgage), and Borrower warrants and shall forever defend the title of the Mortgaged Property against all claims. Until the Note is paid in full, Borrower shall maintain the title to the Mortgaged Property, (including all additions or replacements) free and clear of all liens and encumbrances other than this Mortgage.

1.03  Monthly Tax Deposits.  At Lender's option, in addition to the payments required under the Note, Borrower shall pay Lender monthly an amount equal to one-twelfth (1/12) of the yearly taxes and assessments on the Mortgaged Property as estimated by Lender.  If Lender requires monthly tax deposits, Lender shall pay all taxes, assessments and other similar charges against the Mortgaged Property before they become delinquent, but Lender's obligation to pay all taxes, assessments and other charges is incumbent upon the Borrower's prompt submission to Lender of all tax notices and statements, and Lender is obligated to pay any taxes and assessments concerning the Mortgaged Property only to the extent that Borrower provides Lender with cleared funds.  Borrower's monthly tax deposits shall not be held in trust by Lender but Lender may commingle them with Lender's general funds. Lender shall not pay interest on the monthly tax deposits.  At Lender's option, the monthly tax deposits may be carried as a debit item on the Lender's books. Upon Lender's demand, Borrower agrees to deliver to Lender all additional sums necessary to make up any deficiencies in the amounts necessary to pay all taxes, assessments and similar charges assessed against the Mortgaged Property.  If Borrower defaults under the Note, this Mortgage or the Loan Agreement, Lender may apply the balance of all monthly tax deposits held by Lender to the reduction of the indebtedness secured by this Mortgage.

1.04  Taxes, Liens and Utility Charges.
    (a)  If Lender does not require monthly tax deposits, Borrower shall promptly pay when due all ad valorem taxes and assessments and other similar charges assessed against the Mortgaged Property;
    (b)  Borrower shall promptly pay when due, all hookup and periodic use charges for utilities (public or private);
    (c)  Borrower will promptly provide Lender with receipts evidencing the payment of all deposits, taxes, assessments, rates, dues, charges, fines and impositions levied or assessed against the Mortgaged Property by the federal, state, county, municipality, or other taxing authorities and any other charge which, if unpaid, would become a lien upon the Mortgaged Property;
    (d)  Borrower will not permit any statutory or other liens to be created or remain outstanding against any of the Mortgaged Property.

1.05  Insurance.  Until the indebtedness secured by this Mortgage is paid in full, Borrower will obtain and maintain for Lender's benefit, all insurance policies insuring the Mortgaged Property against fire, extended coverage and such other insurable hazards, casualties and contingencies as Lender may require.  The form of all required policies, the amounts of coverage, and the companies issuing the policies shall be reasonably acceptable to Lender.

All insurance policies obtained by Borrower concerning the Mortgaged Property shall contain a Florida standard, mortgage clause making losses payable to Lender and not to Borrower and Lender jointly.  Borrower shall not obtain insurance policies (other than those required by Lender) that are concurrent in form with the required policies or that contribute to the coverage afforded by the required policies without Lender's prior written consent. The insurance policies obtained by Borrower shall not be terminable or modified without thirty (30) days' prior written notice to Lender, and shall be evidenced by original policies or certified copies of policies deposited with Lender, as Lender may elect.

At least thirty (30) days before each insurance policy (required or optional) expires, Borrower shall deliver to Lender evidence satisfactory to Lender that the policy has been renewed and a receipt evidencing that the premium for the renewal policy has been paid. Borrower shall deliver to Lender the originals of all insurance policies concerning the Mortgaged Property or, at Lender's option, Borrower may deliver to Lender, original evidence of each insurance policy.  As further security for the payment of the indebtedness secured by this Mortgage, Borrower assigns to Lender all Borrower's right to all unearned premiums under the policies.

Borrower authorizes Lender, at Lender's option, to adjust or compromise any loss under any insurance policy concerning the Mortgaged Property.  Borrower directs each insurer to pay all insurance proceeds directly to Lender and not to Borrower and Lender jointly. If the payment of insurance is made jointly, Borrower shall promptly unconditionally endorse the payment to Lender, and if Borrower fails to do so, Borrower irrevocably appoints Lender as Borrower's attorney-in-fact to endorse the payment to the Lender. Borrower acknowledges that this appointment of Lender as Borrower's attorney-in-fact for the purposes set forth in this section is coupled with an interest and, as such, is irrevocable.  Borrower shall hold all proceeds of insurance Borrower receives in trust for the benefit of Lender in a segregated account and not commingled with Borrower's other funds, and Borrower shall promptly pay to Lender all such proceeds upon Lender's demand.

After deducting any expenses (including reasonable attorney's fees), at its option, Lender may apply the insurance proceeds to reduce the indebtedness secured by this Mortgage or Lender may apply the insurance proceeds to the restoration of the Improvements. If Lender chooses to restore the Improvements, Lender may pay all or any portion of the insurance proceeds to the Borrower for application to the restoration of the Improvements upon terms and conditions as Lender may reasonably impose to assure the quality of the restoration and the proper application of the insurance proceeds to the costs of restoration. Lender's application of the insurance proceeds to reduce the indebtedness secured by this Mortgage shall not obligate Lender to release any portion of the Mortgage Property from the lien and operation of this Mortgage. In any event, Lender is not responsible to Borrower for any failure to collect insurance proceeds.

1.06 Monthly Insurance Premium Deposits. At Lender's option, in addition to the payments required under the Note, Borrower shall pay Lender monthly an amount equal to one-twelfth (1/12) of the yearly premiums. Lender shall pay those insurance premiums when due, but Lender's obligation to pay insurance premiums is incumbent upon Borrower's prompt submission to Lender of all insurance premium statements, and Lender is obligated to pay such insurance premiums only to the extent that Borrower provides Lender with cleared funds. Borrower shall promptly furnish Lender with all insurance premium statements, Borrower's monthly installments of insurance premiums shall not be trust funds, but Lender may commingle them with Lender's general funds. Lender shall not pay interest on Borrower's monthly installments of insurance premiums. At Lender's option, the monthly installments of insurance premiums may be carried as a debit item on Lender's books. Upon Lender's demand, Borrower agrees to deliver to Lender all additional sums necessary to make up any deficiencies in the amounts necessary to pay the insurance premiums. If Borrower defaults under the Note, this Mortgage, or the Loan Agreement, Lender may apply the balance of all monthly installments of insurance premiums to the reduction of the indebtedness secured by this Mortgage.

1.07 Condemnation. If all or any part of the Mortgaged Property is damaged or taken through condemnation (whether by judicial proceeding or by a conveyance in lieu of foreclosure), either temporarily or permanently, to further secure the payment of the indebtedness secured by this Mortgage, Borrower assigns to Lender all compensation, awards, and other payments made to Borrower in connection with the taking. Borrower authorizes Lender, at its option, to commence, prosecute, and defend, in Lender's name or in Borrower's name, any proceeding relating to the taking and to settle or compromise any claim of Borrower in connection with the taking. Borrower assigns to Lender all Borrower's right to all compensation, award, damages, claim, right of action and proceeds of the taking. After deducting from the proceeds of condemnation received by Lender all Lender's expenses incurred in connection with the taking (including Lender's reasonable attorney's fees), Lender may release to Borrower all or any portion of the net proceeds upon such terms and conditions as Lender may reasonably impose to assure the quality of the restoration and the proper application of the proceeds to the costs of restoration, or, at Lender's option, Lender may apply the proceeds to the reduction of the indebtedness secured by this Mortgage. If Lender applies the proceeds to reduce the indebtedness secured by this Mortgage, Lender shall pay any excess proceeds to Borrower. Borrower shall execute all additional instruments evidencing Borrower's assignment of all compensation, award, damages, claims, right of action and proceeds as Lender may require. Lender is not obligated to release any portion of the Mortgaged Property from the lien of the Mortgage because Lender chooses to apply the condemnation proceeds to reduce the indebtedness secured by this Mortgage.

1.08 Care of the Mortgaged Property.
   (a) Borrower shall preserve and maintain the Mortgaged Property in good condition and repair, and Borrower shall not commit or suffer any waste of the Mortgaged Property;
   (b) Borrower shall permit Lender to inspect the Mortgaged Property at any time during normal business hours until the indebtedness secured by this Mortgage is paid in full; and
   (c) Borrower shall promptly comply with all present and future restrictive covenants, conditions, and governmental laws, ordinances, rules and regulations affecting the Mortgaged Property.

1.09 Further Assurances, After Acquired Property. Until the indebtedness by this Mortgage is paid in full, the lien of this Mortgage extends to all Borrower's after-acquired property as more particularly set forth in the description of the "Mortgaged Property" and upon Lender's request, Borrower shall execute and deliver to Lender or cause to be executed and delivered to Lender and, where appropriate, cause to be recorded or filed in all places requested by Lender, all instruments of further assurance, including, without limitation, any further security agreements and financing statements as may, in Lender's opinion, be reasonably necessary or desirable to effectuate, perfect, or preserve Borrower's obligations under the Note and this Mortgage and the lien of this Mortgage as a first lien upon all of the Mortgaged Property, whether now owned or acquired by Borrower in the future. Borrower shall comply with all terms and conditions of any instruments required of Borrower by Lender under this section.

1.10 Expenses. Borrower shall reimburse Lender for all costs and expenses, including, but not limited to, reasonable attorney's fees of 10% of the loan amount in accordance with FS 687.06, appraisal fees, reappraisal fees, title insurance costs, and environmental assessment fees incurred by Lender in connection with making, renewing, modifying, supplementing, enforcing or collecting the Note, this Mortgage, or enforcing or protecting Lender's interest in the Mortgaged Property or enforcing Lender's rights under the Loan Agreement, including, without limitation, the foreclosure of this Mortgage, prosecuting or defending any insurance claim or condemnation action to protect the security of this Mortgage, or in connection with the arbitration, bankruptcy, administrative and appellate proceedings. Lender's costs and expenses shall be included in the indebtedness secured by the lien of this Mortgage, and Borrower shall pay any amounts due Lender under this section on demand, together with interest at the Default Rate as provided in the Note.

1.11 Lender's Performance of Defaults. If Borrower defaults in the performance of any term, covenant, or condition of this Mortgage, Lender may perform the term, covenant, or condition on Borrower's behalf, and all payments made or costs incurred by Lender in connection with performing on Borrower's behalf shall be a part of

the indebtedness secured by this Mortgage and shall earn interest at the Default Rate provided in the Note. Lender may enter the Mortgaged Property at any time to cure Borrower's defaults on Borrower's behalf, without incurring liability of any nature to Borrower or any person authorized by Borrower to be in possession of the Mortgaged Property. In exercising its rights under this section, Lender shall be the sole judge of the necessity of the action taken and of the propriety of the sums expended.

    1.12 <u>Estoppel Affidavits</u>. Within ten (10) days after Lender's written request, Borrower shall furnish Lender a written statement, setting forth the unpaid principal and interest under the Note and stating whether Borrower has any offsets or defenses against enforcement of the Note.

    1.13 <u>Leases Affecting Mortgaged Property</u>. Borrower will promptly comply with and perform all its obligations under all leases affecting the Mortgaged Property.

    1.14 <u>Defense by Borrower</u>. At Lender's option, Borrower shall, at Borrower's expense, prosecute or defend any action or proceeding which might, in Lender's judgement, affect the value of the Mortgaged Property, the priority of this Mortgage, or the rights and powers of Lender under this Mortgage.

    1.15 <u>Time</u>. Time is of the essence in connection with all Borrower's obligations in the Note and this Mortgage.

    1.16 <u>Solvency of Borrower</u>. Borrower is now in a solvent condition and no bankruptcy or insolvency proceedings are presently pending or threatened against or contemplated by Borrower, or to the best of Borrower's knowledge, against or by any partner of Borrower (if Borrower is a general or limited partnership).

ARTICLE TWO<br>ASSIGNMENT OF RENTS

    2.1 <u>Assignment</u>. Borrower does hereby absolutely and unconditionally assign and transfer to Lender all of Borrower's estate, right, title and interest in and to the Rents, to have and to hold the Rents unto Lender, its successors and assigns forever. From time to time, upon request of Lender, Borrower shall give further evidence of this assignment to Lender by executing and delivering to Lender specific assignments of the Leases and Rents, in form and content approved by Lender. All such specific assignments shall be of the same dignity and priority as this Mortgage. From time to time, upon request of Lender, Borrower shall also execute and deliver to Lender any notification to tenants or other document reasonably required by Lender.

    2.2 <u>Payment of Rents to Borrower, as Trustee, Until Default</u>. So long as no Event of Default has occurred, Borrower may, as trustee for the use and benefit of Lender, collect, receive and accept the Rents as they become due and payable (but in no event for more than two (2) months in advance); provided, however, that if the Rents exceed the payments due under the Note, the Borrower may use such excess, first, for the operation and benefit of the Mortgaged Property and second, for the general benefit of the Borrower. Upon the occurrence of an Event of Default, Lender may, at its option, remove the Borrower as trustee for the collection of Rents and appoint any other person including, but not limited to, itself as a substitute trustee to collect, receive, accept and use all such Rents in payment of the obligations secured by this Mortgage, in such order as Lender shall elect in its sole and absolute discretion, whether or not Lender takes possession of the Mortgaged Property. Borrower hereby directs each of the respective tenants under the leases, and any rental agent, to pay to Lender all such Rents, as may now be due or shall hereafter become due, upon demand for payment thereof by Lender without any obligation on the part of any such tenant or rental agent to determine whether or not an Event of Default has in fact occurred. Upon an Event of Default, the permission hereby given to Borrower to collect, receive and accept such Rents as trustee shall terminate and such permission shall not be reinstated upon a cure of the Event of Default, without Lender's specific written consent. Further, upon the event of a Default, Borrower shall immediately turn over to Lender all Rents in the actual or constructive possession of Borrower, its affiliates, contractors, or its agents, together with an accounting thereof. Exercise of Lender's rights under this Section, and the application of any such Rents to the obligations secured by this Mortgage, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant hereto, but shall be cumulative and in addition to all other rights and remedies of Lender.

    2.3 <u>Performance Under Leases</u>. Borrower covenants that it shall, at its sole cost and expense, (a) duly and punctually perform and discharge, or cause to be performed and discharged, all of the obligations and undertakings of Borrower or its agents under the leases affecting the Mortgaged Property (the "Leases"), (b) use its best efforts to enforce or secure, or cause to be enforced or secured, the performance of each and every obligation and undertaking of the respective tenants under the Leases, (c) promptly notify Lender if Borrower receives any notice from a tenant claiming that Borrower is in default under a Lease, and (d) appear in and defend any action or proceeding arising under or in any manner connected with the Leases.

    2.4 <u>Leases in Good Standing</u>. All Leases are in full force and effect, and there are no defaults thereunder or any defenses or offsets thereto on the part of any tenant.

    2.5 <u>Provisions of Leases and Approval of Tenants</u>. All Leases shall be inferior and subordinate to the lien of this Mortgage and the terms of each Lease shall so expressly provide. Borrower covenants that all Leases hereafter entered into by Borrower shall be in form and substance satisfactory to Lender. Further, the Lender specifically reserves the right to approve all proposed tenants and any assignee or sublessee of any existing tenant.

    2.6 <u>Notification of Lender's Rights</u>. Lender shall have the right, but not the obligation, at any time and from time to time, to notify any tenant under any Lease of the rights of Lender as provided in this Article 2 and Borrower, upon demand from Lender, shall confirm to such tenant the existence of such rights.

2.7 Other Assignments. Borrower shall not further assign or transfer the Leases or Rents except in favor of Lender as provided in this Article 2, and shall not create or permit to be created or to remain, any mortgage, pledge, lien, encumbrance, claim, or charge on the Leases or Rents. Any transaction prohibited under this Section shall be null and void.

2.8 Section 697.07 of the Florida Statutes. The assignments of Leases and Rents contained in this Mortgage are intended to provide Lender with all the rights and remedies of mortgagees pursuant to Section 697.07 of the Florida Statutes (hereinafter "Section 697.07"), as may be amended from time to time. However, in no event shall this reference diminish, alter, impair, or affect any other rights and remedies of Lender, including but not limited to, the appointment of a receiver as provided herein, nor shall any provision in this Article 2, diminish, alter, impair or affect any rights or powers of the receiver in law or equity or as set forth in Section 3.04 herein. In addition, this assignment shall be fully operative without regard to value of the Mortgaged Property or without regard to the adequacy of the Mortgaged Property to serve as security for the obligations owed by Borrower to Lender, and shall be in addition to any rights arising under Section 697.07. Further, except for the notices required hereunder, if any, Borrower waives any notice of default or demand for turnover of rents by Lender, together with any rights under Section 697.07 to apply to a court to deposit the Rents into the registry of the court or such other depository as the court may designate.

ARTICLE THREE
DEFAULTS AND REMEDIES

3.01 Event of Default. Borrower is in default if any of the following events occur:

(a) Borrower fails to pay when due, any installments of interest or principal required by the Note;

(b) Borrower fails to observe any other term, covenant, and condition required of the Borrower under the Note, this Mortgage, or under the Loan Agreement (if any);

(c) Borrower files a voluntary petition in bankruptcy for adjudication as a bankrupt or insolvent or Borrower files petition or answer seeking or acquiescing to any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any law or regulation relating to bankruptcy, insolvency or other relief for debtors;

(d) Borrower seeks, consents to, or acquiesces to, or is unable to prevent the appointment of a trustee, receiver, or liquidator for the Mortgaged Property, or Borrower makes a general assignment for the benefit of creditors or admits in writing that Borrower is unable to pay debts as they become due;

(e) Borrower fails to discharge within sixty (60) days any petition filed against Borrower seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any law or regulation relating to bankruptcy, insolvency or other relief for debtors;

(f) Borrower fails to observe all the terms, covenants and conditions of any other obligation of Borrower to Lender, wherever and however incurred.

3.02 Acceleration of Maturity. If Borrower is in default, at its option, Lender may accelerate the maturity date for payment of the entire outstanding indebtedness evidenced by this Note, whereupon the Note shall be immediately due and payable, just as though the date of Lender's declaration of accelerated maturity was the originally specified, scheduled maturity date in the Note, and, at its option, Lender may declare all other sums secured by this Mortgage immediately due and payable.

3.03 Lender's Rights to Enter and Take Possession, Operate and Apply Income.

If Borrower is in default, upon Lender's demand, Borrower shall surrender possession of the Mortgaged Property to Lender and, to the extent permitted by law, Lender may take possession of the Mortgaged Property and exclude Borrower from the Mortgaged Property.

If Borrower fails to surrender the Mortgaged Property to the Lender, Lender may obtain a judgement requiring Borrower to deliver immediate possession of the Mortgaged Property to Lender, and Borrower specifically consents to the entry of that judgement. Upon Lender's demand, Borrower will pay Lender, all Lender's costs and expenses, including attorney's fees, incurred in obtaining the judgement awarding Lender possession of the Mortgaged Property, and, until paid, all Lender's costs and expenses shall be added to the indebtedness secured by this Mortgage and shall earn interest at the Default Rate provided in the Note.

If Lender takes possession of the Mortgaged Property under this section, Lender may use, operate, manage, and control the Mortgaged Property, and Lender may:
(a) maintain the Mortgaged Property;
(b) construct the improvements upon the Mortgaged Property;
(c) make all necessary repairs, renewals, replacements, additions, and improvements to the Mortgaged Property and purchase or otherwise acquire additional fixtures, equipment, machinery and other personal property required in connection with the operation of the Mortgaged Property;
(d) have access to all the books, records, and papers concerning the Mortgaged Property;
(e) insure the Mortgaged Property;
(f) manage and operate the Mortgaged Property and exercise all the rights and powers of

Borrower (in Borrower's name or otherwise), with respect to the management and operation of the Mortgaged Property;

(g) enter into all agreements reasonably required in connection with Lender's exercise of Lender's right under this section; all as Lender may determine to be to its best advantage.

If Lender takes possession of the Mortgaged Property under this section, Lender may collect all the income revenues, rents, issues and profits generated by the Mortgaged Property (whether past due or subsequently due) and, after deducting all Lender's costs and expenses incurred in taking possession of, managing, and operating the Mortgaged Property (including compensation for all persons employed by Lender for such purposes) the cost of all maintenance, repair, replacements, additions, improvements, purchases and acquisitions, the costs that Lender chooses to pay, of all insurance, all taxes, assessments and other charges against the Mortgaged Property, and other proper charges against the Mortgaged Property, Lender shall apply the remainder first to the payment of accrued interest and principal under the Note, then to any other indebtedness secured by this Mortgage.

When all amounts due under the Note are paid and all other defaults are cured, Lender shall surrender possession of the Mortgaged Property to Borrower; provided, however, that if Borrower subsequently defaults under this Mortgage, Lender shall have the right to retake possession of the Mortgaged Property as set forth in this section.

3.04  Receiver.  If Borrower is in default, Lender may as a matter of strict right and without regard to the adequacy of the security, have a receiver appointed to take possession of the Mortgaged Property, collect the rents and profits, complete any construction of the Improvements, operate the Mortgaged Property, and apply all income from the Mortgaged Property as the court may direct. The receiver shall have all rights and powers permitted under Florida law.

The receiver's costs and expenses, (including receiver's fees and attorney's fees) incurred in connection with the protection and operation of the Mortgaged Property shall be included in the indebtedness secured by this Mortgage.

Lender's right to take possession, construct the Improvements, manage and operate the Mortgaged Property, whether by a receiver or otherwise, is in addition to any other right or remedy granted by this Mortgage or afforded by law and may be exercised along or in combination with Lender's other rights and remedies. If Lender takes possession of the Mortgaged Property under section 3.03 and 3.04 of this Mortgage, Lender must account to Borrower only for rents, issues, and profits actually received by Lender. Notwithstanding the appointment of a receiver, Lender is entitled to the possession and control of any cash or other instruments, at the time held by Lender or payable or deliverable under the terms of this Mortgage to Lender.

3.05  Lender's Power of Enforcement.  If Borrower is in default, Lender may file suit to enforce payment of the Note or Borrower's performance of any term, covenant, or condition of this Mortgage, or to foreclose this Mortgage and sell the Mortgaged Property as an entirety or in separate parcels, and Lender may pursue any other remedy provided by law.

3.06  Principal and Interest Become Due on Foreclosure.  If Lender commences a suit for foreclosure of this Mortgage, the entire indebtedness evidenced by the Note, if not previously declared due and payable, shall, at once, become due and payable.

3.07  Purchase by Lender.  At any foreclosure sale, Lender may purchase the Mortgaged Property and, upon compliance with the terms of sale, Lender may hold and dispose of the Mortgaged Property without further accountability to Borrower.

3.08  Waiver of Appraisement, Valuation, Stay, Extension, Redemption laws.  Borrower agrees, to the full extent permitted by law, that if Borrower is in default, neither Borrower nor anyone claiming by, through, or under Borrower will take advantage of any appraisement, valuation, stay, extension or redemption laws to prevent or hinder the enforcement of this Mortgage or the absolute sale of the Mortgaged Property in foreclosure. Borrower, for itself and for all persons claiming by, through or under it, waives, to the full extent that it may lawfully do so, the benefit of all such laws.

3.09  Suit to Protect the Mortgaged Property.  Lender may institute all proceedings Lender considers expedient to protect the Mortgaged Property, to preserve or protect its interest in the Mortgaged Property or to avoid any potentially invalid governmental law, regulation, ordinance, rule or order that may impair the value of the security for the Note or prejudice Lender's interest in the Mortgaged Property. All costs or expenses (including reasonable attorneys' fees), incurred by Lender in connection with any proceeding shall be included in the indebtedness secured by this Mortgage, and Borrower shall promptly, upon Lender's demand, repay all costs and expenses to Lender, together with interest at the Default Rate provided in the Note.

3.10  Borrower to Pay the Note on any Default; Application of Proceeds on any Default.  If Borrower defaults under this Mortgage, Lender may sue for the entire indebtedness evidenced by the Note remaining unpaid, together with Lender's costs and expenses, including reasonable compensation for Lender's agents and attorneys.

Lender may sue on the Note before, after or during the pendency of any proceedings for the enforcement of this Mortgage and Lender's right to recover on a judgement entered on the Note shall not be affected by Lender's possession of the Mortgaged Property, by a foreclosure sale, or by Lender's exercise of any other right under this Mortgage or provided by law.

If all or any portion of the Mortgaged Property is sold after foreclosure and the proceeds of the sale are

insufficient to pay the indebtedness secured by the Mortgaged Property, Lender may enforce payment of all amounts then remaining unpaid under the Note, and Lender may recover judgement for all amounts then remaining unpaid, together with interest at the Default Rate provided in the Note. Any judgement against Borrower shall bear interest at the Default Rate (as defined in the Note).

Borrower agrees, to the full extent that it may lawfully do so, that no levy of or execution upon any of the Mortgaged Property or upon any other property of the Borrower shall, in any manner, affect the Lender's lien on the Mortgaged Property or the Lender's rights, powers, or remedies under this Mortgage.

Lender shall apply all sums received by Lender under this section as follows:
(a) first, to reimburse Lender's collection and enforcement costs and expenses, including reasonable compensation for Lender's agents and attorneys;
(b) then, to pay the amounts due and unpaid under the Note;
(c) finally, to payment of all other indebtedness due and owing from Borrower to Lender.

3.11  Delay or Omission - No Waiver.  Lender's delay or failure to exercise any right, power, or remedy under this Mortgage or provided by law, shall not impair Lender's future exercise of that right, power, or remedy or constitute Lender's waiver of or acquiescence to Borrower's default. Every right, power, and remedy given to Lender by this Mortgage may be exercised by Lender as often as Lender chooses.

3.12  No Waiver of One Default to Affect Another.  Lender's waiver of default shall not affect Lender's rights, powers, and remedies as to any other then existing default or any subsequent default.  If Lender (a) grants a forbearance or an extension of time for the payment of any sums secured by this Mortgage; (b) waives any right granted in the Note, this Mortgage, the Loan Agreement, or provided by law; (c) waives any right granted in the Note, this Mortgage, the Loan Agreement, or provided by law; (d) releases any part of the Mortgaged Property from the lien of this Mortgage; (e) changes any of the terms of the Note or this Mortgage; (f) consents to the filing of any map, plat or replat of the Land; (g) consents to any easement on the Land; or (h) makes or consents to any agreement subordinating the lien of this Mortgage, Lender's act or omission shall not release, modify or otherwise affect Borrower's liability under the Note, or this Mortgage, or the liability of any general partner of Borrower (if applicable) or of any co-signer, endorser, surety or guarantor; nor shall Lender's act or omission preclude Lender from exercising any right, power, or remedy granted by this Mortgage, nor, except as otherwise expressly consented to by Lender, shall Lender's act or omission alter the lien of this Mortgage. If all or any portion of the Mortgaged Property is sold or transferred (by operation of law or otherwise), Lender may deal with the transfers to the same extent as Lender might deal with Borrower without in any way releasing or discharging Borrower from its obligations under the Note, this Mortgage, and the Loan Agreement.

3.13  Discontinuance of Proceedings - Position of Parties Restored.  If any proceeding to enforce Lender's right or remedies under this Mortgage is discontinued or abandoned for any reason or is determined adversely to Lender, Borrower and Lender shall be restored to their former positions under this Mortgage and all Lender's rights, powers, and remedies shall continue as if no proceeding took place.

3.14  Remedies Cumulative.  Lender's rights, powers and remedies under this Mortgage are not exclusive of any other right, power, or remedy provided by law. Each of the Lender's rights, power and remedies are cumulative and in addition to all other rights, powers and remedies under this Mortgage or provided by law.

3.15  Governing Law; Severability.  This Mortgage shall be governed by federal law and the laws of the State of Florida.  In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Mortgage and the Note are declared to be severable.

## ARTICLE FOUR
## ADDITIONAL COVENANTS

4.01  Mechanics' Liens.  Borrower shall, at Borrower's sole expense pay when due or transfer to bond as permitted by Chapter 713 of the Florida Statutes, all claims of mechanics, materialmen, laborers and other which, if unpaid, could result in a lien on the Mortgaged Property. Borrower shall not permit any mechanics', materialmen's, or laborers' statutory liens to be filed against the Mortgaged Property.

4.02  Further Liens.  Borrower covenants that Borrower shall not further encumber the Mortgaged Property with any lien, security interest, or mortgage, nor shall Borrower request or allow a future advance under any existing lien, security interest, or mortgage affecting the Mortgaged Property without Lender's prior written consent, which may be withheld at Lender's sole discretion. Any further encumbrance or future advance under an existing encumbrance made without Lender's prior written consent will constitute a default under this Mortgage.

4.03  Transfer.  Borrower shall not sell, convey, or transfer, or permit to be sold, conveyed or transferred, any interest in the Mortgaged Property or any part thereof.  A contract for deed, or an assignment, pledge or encumbrance of a beneficial interest in any land trust, or a lease for all or substantively all of the Mortgaged Property shall constitute a transfer prohibited by the provisions of this Section and shall be null and void.

4.04  Future Advances.  In addition to all other indebtedness secured by this Mortgage, this Mortgage shall also secure and constitute a first lien on the Mortgaged Property for all future advances made by Lender to the Borrower for any purpose within twenty (20) years after the date of this Mortgage, just as if the advances were made of the date of this Mortgage. Any future advances may be made at the option of Lender. The total amount of the indebtedness that may be secured by this Mortgage may increase or decrease from time to time, but the total unpaid

principal balance secured at any one time by this Mortgage shall not exceed the amount set forth on the first page of this Mortgage, together with accrued interest and all Lender's costs, expenses, and disbursements made under this Mortgage, just as if the advances were made on the date of this Mortgage.

4.05 Marshaling of Assets. To the extent permitted by law, Borrower, on its own behalf and on behalf of its successors and assigns, waives all right Borrower may have to require a marshaling of assets by Lender or to require Lender, upon foreclosure, to request the sale of any particular portion or portions of the Mortgaged Property in any particular order. Borrower agrees that Lender may request the sale of the Mortgaged Property as a whole parcel.

4.06 Tax on Mortgage or Indebtedness; Usury. If, at any time before the indebtedness secured by this Mortgage is paid in full, any governmental law, regulation, rules, ordinance, or order: (a) makes Borrower's payment of the sums required to be paid by Borrower under this Mortgage unlawful, (b) makes Borrower's payment of all charges assessed upon the Note and upon the instruments given to secure the Note unlawful, (c) makes Borrower's payment of the indebtedness represented by the Note unlawful, (d) makes Borrower's covenants in the Note and this Mortgage concerning the payments set forth in (a) and (b) of this section unenforceable, Lender may, at Lender's option, declare the entire indebtedness secured by this Mortgage due and payable upon thirty (30) days' written notice to Borrower.

4.07 Notice of Limitation of Future Advances. Borrower shall not file a Notice of Limitation on Future Advances in the public records of the county where the Mortgaged Property is located without Lender's prior written consent which may be withheld at Lender's sole discretion.

ARTICLE FIVE
MISCELLANEOUS PROVISIONS

5.01 Successors and Assigns Included in Parties. The terms "Lender" and "Borrower" in this Mortgage include their respective heirs, personal representatives, and assigns. The terms of this Mortgage bind and are for the benefit of their respective heirs, personal representatives, successors and assigns. The term "Borrower" includes any future owner of the Mortgaged Property, and the term "Lender" includes any future owner of the Note and this Mortgage, but this provision does not constitute Lender's consent to any assignment of this Mortgage by Borrower or any transfer of the Mortgaged Property.

5.02 Addresses for Notices, etc. Any notice, demand or other instrument authorized by this Mortgage to be given to either party shall be given in accordance with the procedure set forth in the Loan Agreement at the addresses set forth at the beginning of this Mortgage, unless either party notifies the other in writing of an address change or by email at the email address provided by Borrower on Borrowers application. It is Borrowers responsibility to keep Lender update on a current and active email address.

5.03 Headings, etc. The headings of the articles and sections of this Mortgage are for convenience and are not intended to limit or otherwise affect any of the terms contained in the articles or sections.

5.04 Invalid Provisions to Affect No Others. If one or more of the provisions in this Mortgage or in the Note are invalid, illegal, or unenforceable that fact shall not affect the validity and enforceability of the remaining provisions in the Mortgage or the Note.

5.05 Modifications Must Be in Writing. This Mortgage may be modified, waived, discharged or terminated only by a written instrument signed by the party against which enforcement is sought. Any agreement made by Borrower and Lender relating to this Mortgage subsequent to the date of this Mortgage shall be superior to the right of the holder of any intervening interests in the Mortgaged Property.

5.06 Controlling Provisions. This Mortgage is given in connection with the requirements of the Loan Agreement, if any, the terms of which are incorporated herein by reference. In the event of a conflict between the terms of this Mortgage and the terms of the Loan Agreement, the terms of the Loan Agreement shall control.

5.07 Homestead. The land described herein is not the homestead of the grantor and neither the grantor nor the grantor's spouse or anyone for whose support the grantor is responsible, resides on or adjacent to said land.

5.08. **Waiver of Jury Trial.** BY ACCEPTANCE HEREOF, BORROWER (AND ANY PARTNER OF A BORROWER) AGREES THAT NEITHER BORROWER, NOR ANY PARTNER, ASSIGNEE, SUCCESSOR, HEIR, OR LEGAL REPRESENTATIVE OF BORROWER (ALL OF WHOM ARE HEREINAFTER REFERRED TO AS THE "PARTIES") SHALL SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDINGS, COUNTERCLAIM, OR ANY OTHER LITIGATION PROCEDURE BASED UPON OR ARISING OUT OF THIS AGREEMENT OR ANY INSTRUMENT EVIDENCING, SECURING OR RELATING TO THE INDEBTEDNESS AND OTHER OBLIGATIONS EVIDENCED HEREBY, ANY RELATED AGREEMENT OR INSTRUMENT, ANY OTHER COLLATERAL FOR THE INDEBTEDNESS EVIDENCED HEREBY OR THE DEALINGS OR THE RELATIONSHIP BETWEEN OR AMONG THE PARTIES, OR ANY OF THEM. NONE OF THE PARTIES WILL SEEK TO CONSOLIDATE ANY SUCH ACTION, IN WHICH A JURY TRIAL HAS BEEN WAIVED, WITH ANY OTHER ACTION IN WHICH A JURY TRIAL HAS NOT BEEN WAIVED. THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY NEGOTIATED BY THE PARTIES WITH LENDER AND THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS. LENDER HAS IN NO WAY AGREED WITH OR REPRESENTED TO ANY OF THE PARTIES THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

Borrowers:

**Scionti Construction Group LLC**
a Florida limited liability company

By: Anne Maria Ferrao, its Manager

ANH

STATE OF FLORIDA )

COUNTY OF PINELLAS Miami-Dade

The foregoing instrument was acknowledged before me by means of ___✓___ physical presence or _____
online notarization, this _10_ day of April, 2023, by Anna Maria Ferrao, as Manager of Scionti Construction Group,
LLC, a Florida limited liability company and on behalf of said company, _____ who is personally known to me or
_✓_ who has produced _Drivers License_ as identification.

[ S E A L ]

Notary Public
State of Florida
My Commission Expires: 6/27/24

JASON CRUZ
Notary Public - State of Florida
Commission # HH 013481
My Comm. Expires Jun 27, 2024
Bonded through National Notary Assn.